# East Birmingham Land Co. *v.* Dennis.

*Bill in Equity to compel Transfer of Stock by Corporation.*

1. *Certificate of stock, indorsed in blank; rights of owner, as against subsequent purchaser; custom among stock-brokers.*—A certificate of stock in a private corporation, indorsed in blank by the person to whom it was issued, is not a negotiable instrument, and no custom or usage to the contrary among stock-brokers is valid; and such certificate having been lost, or stolen from the owner, without fault on his part, his right to it is superior to that of any person who may acquire it by purchase for value from any other holder.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 13th April, 1888, by J. F. Dennis, against J. P. Mudd, and the East Birmingham Land Company, a private corporation; and sought to compel the transfer, on the books of the corporation, of a certificate for ten shares of stock, of which the complainant claimed to be the owner, and to compel the delivery of the certificate to him by said Mudd, who had possession of it under claim of ownership. The certificate was issued in the name of A. R. Dearborn, and was indorsed by him in blank. The complainant claimed that he had bought the certificate, with the blank indorsement thereon, from a holder who had acquired it by purchase from said Dearborn; and that it was lost by him, or stolen from him, without fault on his part. Mudd purchased the certificate, for full value, from Wilson, Sage & Clark, stock-brokers in Birmingham; and while denying complainant's ownership, claimed that he acquired a good title by the custom and usage of brokers and merchants in Birmingham. A decree *pro confesso* was taken against the corporation. On final hearing, on pleadings and proof, the court rendered a decree for the complainant; and this decree is now assigned as error, by each of the defendants separately.

S. D. WEAKLEY, for the appellants, cited *Prall v. Tilt*, 28 N. J. Eq. 479; *Turnpike Co. v. Ferree*, 17 N. J. Eq. 117; *Rogers v. Insurance Co.*, 8 N. J. 167; *Fatman v. Lobach*, 1 Duer, 354; *Leavitt v. Fisher*, 4 Duer, 354; 2 Cowen, 770;

3 Lea, Tenn. 1; *Cherry v. Frost,* 7 Lea, 1; *Galveston v. Sibley,* 5 Texas, 269; 53 Cal. 428; Mor. Corp., §§ 181, 185, 190, and authorities there cited.

W. R. HOUGHTON, *contra,* cited *Barstow v. Savage Mining Co.,* 64 Cal. 388, or 49 Amer. Rep. 705; Cook on Stockholders, §§ 7, 10, 192, 368, 437; *Blackman v. Lehman, Durr & Co.,* 63 Ala. 547; *Lehman, Durr & Co. v. Collins,* 69 Ala. 127; *Cook v. Patterson,* 35 Ala. 102.

SOMERVILLE, J.—We concur in the conclusion reached by the judge of the City Court, that the appellee, Dennis, complainant in the bill, is the owner of the ten shares of stock which are the subject of litigation in the present suit. The testimony satisfactorily proves that the certificate of stock, indorsed in blank by Dearborn, who was the owner on the books of the defendant corporation, was the property of the appellee, and was taken or stolen from his possession, without any negligence on his part whatever, several months before it was purchased by the defendant Mudd, who innocently bought and paid value for it, some time in March, 1888.

The only question is, whether Mudd, who paid full value for this stock, without notice of the complainant's claim to it, acquired a title superior to that of complainant.

The established rule is, that no person can ordinarily be deprived of his ownership of property save by his own consent, or his negligence. The only exception to this rule is the case of a *bona fide* purchaser for value, of negotiable paper. We have no reference, of course, to the taking of property for public uses by judicial condemnation, which may be done without the owner's consent.

It can not be contended, with any degree of plausibility, that, under the facts of this case, the complainant was guilty of negligence, or the want of ordinary care in the custody of the certificate. He kept it in a box in the vault of a banking-house, whence it was abstracted by some unknown person, apparently, without any fault on his part.

Nor does any question arise involving the rights of a subsequent *bona fide* purchaser of stock, from one shown to be owner on the corporate books, who has already made a prior unregistered transfer of it to another purchaser. All such transfers made by the true owner, and not registered on the books of the corporation within fifteen days, are de-

[East Birmingham Land Co. v. Dennis.]

clared by statute to be "void as to *bona fide creditors, or purchasers without notice.*"—Code, 1886, § 1671; *Fisher v. Jones*, 82 Ala. 117. If the defendant Mudd had claimed by a subsequent purchase from Dearborn, the owner of the stock on the corporate books, this question would arise. But he does not so claim, his title being derived through the complainant Dennis himself, by two or more intermediate transferrees, the first of whom was a fraudulent holder without title. Whether Mudd's title to the stock, therefore, is superior to that of Dennis, depends on whether a certificate of stock, indorsed in blank by the owner, is to be treated as negotiable paper.

The rule is well settled, that a *bona fide* purchaser of a negotiable bill, bond or note, although he buys from a thief, acquires a good title, if he pays value for it without notice of the infirmity of his vendor's title. The authorities are clear in support of the view, that a certificate of corporate shares of stock, in the ordinary form, is not negotiable paper, and that a purchaser of such certificate, although indorsed in blank by the owner, where no question arises under the registration laws, obtains no better title to the stock than his vendor had, in the absence of all negligence on the part of the owner, or his authority to make the sale. This question arose, and was decided by the New York Court of Appeals, in *Mechanics' Bank v. New York & New Haven R. R. Co.*, 13 N. Y. (1856), 599. It was there held, that such a certificate does not partake of the character of a negotiable instrument, and that a *bona fide* assignee, with full power to transfer the stock, takes the certificate subject to the equities which existed against his assignor. Such certificates, said Comstock, J., "contain no words of negotiability. They declare simply that the person named is entitled to certain shares of stock. They do not, like negotiable instruments, run to the bearer, or order of the party to whom they are given." They were said to be, in some respects, like a bill of lading, or warehouse receipt, being "the representative of property existing under certain conditions, and the documentary evidence of title thereto." The most that can be said is, that all such instruments possess a sort of *quasi* negotiability, dependent on the custom of merchants and the convenience of trade. They are not, in the matter of transferability, protected strictly as negotiable paper.

In *Shaw v. Spencer*, 100 Mass. 382; s. c., 97 Amer. Dec., 1 Amer. Rep. 115 (1868), it was also decided, that a certifi-

cate of corporate stock, transferred in blank on its back, was clearly not a negotiable instrument. "No commercial usage", it was said, "could give to such an instrument the attribute of negotiability. However many intermediate hands it may pass through, whoever would obtain a new certificate in his own name, must fill out the blanks, . . so as to derive title to himself directly from the last recorded stockholder, who is the only recognized and legal owner of the shares." The case of *Sewall v. Boston Water Power Co.*, 4 Allen, 282; s. c., 81 Amer. Dec. 701, decided by the same court a few years before, is referred to as a precedent in support of this conclusion.

The precise point in the present case was also decided in *Barstow v. Savage Mining Co.*, 64 Cal. 388; s. c., 49 Amer. Rep. 705, where it was expressly held, that a *bona fide* purchaser of stock standing on the company's books in the name of the former owner, regularly indorsed by him, and stolen from the present owner without his fault, gets no title. The decision was based on the fact, that such certificates are not negotiable instruments, but simply muniments of title, and evidences of the holder's right to a given share in the property and franchises of the corporation. It was observed, in regard to the matter of negligence, as follows: "But, if the purchaser from one who has not the title, and has no authority to sell, relies for his protection on the negligence of the true owner, he must show that such negligence was the proximate cause of the deceit."

The same principle was applied to bills of lading, in *Gurney v. Behrend*, 3 Ellis & Bl. 622, decided by the English Queen's Bench, where an instrument of that kind, indorsed in blank by the consignor, and sent by him to his correspondent, had been misappropriated. The correspondent, without authority, fraudulently transferred the bill for value; and it was held by Lord Campbell, that for the want of the element of negotiability in the paper, the title to the goods was unaffected by the transaction.

The doctrine of *Barstow v. Savage Mining Co.*, *supra*, is well supported by authority, and, in our judgment, announces a correct principle of law, and we fully approve it.— *Woolley v. Sargeant*, 14 Amer. Dec., NOTE, on page 427, and cases there cited; Cook on Stock and Stockholders, sec. 368, 437, 192, 7, 10; 2 Daniel's Neg. Instr. (3d Ed.), §1708*g*. It harmonizes entirely with the declaration of our statute, that shares of stock in private corporations "are personal property,

[Bryan v. Kelly.]

transferrable on the books of the corporation" in accordance with the rules and regulation of the corporation.—Code, 1886, § 1669; *Campbell v. Woodstock Iron Co.*, 83 Ala. 451.

There is a class of cases, not to be confounded with the one in hand, where the holder of such a certificate of stock, indorsed in blank, is clothed with power, as agent or trustee, to deal with such stock to a limited extent, and transfers it by exceeding his powers, or in breach of his trust. In such cases, it has often been held, that the true owner, having conferred on the holder, by contract, all the external *indicia* of title, and an apparently unlimited power of disposition over the stock, "is estopped to assert his title as against a third person, who, acting in good faith, acquires it for value from the apparent owner."—2 Dan. Neg. Inst. (3d Ed.), § 1708*g*; *McNeil v. Tenth Nat. Bank*, 46 N. Y. 325; *Mount Holly Turnpike Co. v. Ferree*, 17 N. J. Eq. 117; *Prall v. Tilt*, 28 *Ib.* 479; *Merchant's Nat. Bank v. Livingston*, 74 N. Y. 223. These cases rest on the principle, that it is more just and reasonable, where one of two innocent parties must suffer loss, that he should be the loser who has put trust and confidence in the deceiver, than a stranger who has been negligent in trusting no one.—*Allen v. Maury & Co.*, 66 Ala. 10.

It being an established principle of law, that certificates of stock are not to be regarded as negotiable paper, it is not permissible to prove a custom or usage among stock-brokers to the contrary. No usage is good which conflicts with an established principle of law, any more than one which contravenes or nullifies the express stipulations of a contract. *Dickinson v. Gay*, 83 Amer. Dec. 656, and NOTE, 664; *E. T., Va. & Ga. R. R. Co. v. Johnston*, 75 Ala. 576; *Lehman v. Marshall*, 47 Ala. 362.

The decree of the court below is in accordance with these views, and must be affirmed.