Spear, J.
The demand of the plaintiffs in error is, in substance, that the Company and Clark be held not to have title in certificate No. 61, and that title *373 in the same he declared to be in them, and for full equitable relief.
It is manifest that if this relief be granted, the claims of the Company and of Clark must be denied them on the ground either—
1. On the doctrine of implied agency; or,
2. On the application of the principles of estoppel.
But Tyler, although secretary and treasurer of the Company, was not its agent to represent to one with whom he might be dealing on his own account, and away from its office, the fact as to who owned the stock of the corporation, or in whose name the stock stood on its books. Such representations were no part of his real or apparent authority. The transaction with the bank was one which did not concern his official duty in any respect, but was wholly for his own personal profit. The Company had no actual or apparent connection with it, nor did Tyler pretend to represent or act for the Company. Indeed it was apparent from the face of the certificate, that Tyler had exercised his authority as secretary for his own advantage. In other words, the case stands as to the question of agency, precisely as though the transfer had been made by one who had no relation whatever with the management of the Company, for it is of no materiality that Tyler was the agent of the Company for some purposes.so long as he was not its agent for the purpose of negotiating its certificates of stock as security for his individual debts, and so long as he did not pretend to have such authority, nor to act for the Company in any way.
True, the statute gives authority to the president and secretary, on demand, to execute and deliver to a stockholder a certificate showing the amount of stock owned by him, but it does not follow from this *374 provision that the secretary could have authority, express or implied, to take possession of a certificate once owned by him, but which had been legally and formally transferred and manually delivered to the Company, and thus passed wholly out of his own possession, and later sold outright to a third party, and issue it anew. His act in abstracting the certificate from the safe, and uttering it as valid, had no relation to the authority with which he was actually clothed, nor in fact with any semblance of authority. It was, in fact, a criminal act, perpetrated for private gain and not connected with any official authority, real or apparent. At all times, after the transfer to the Company, the certificate was in the legal as well as manual possession of the Company until the purchase by Clark, and then and thereafter it was in his legal possession, and in his actual possession until abstracted by Tyler. Tyler’s access to the drawer where the certificate had been placed by Clark, and opportunity to possess himself of any of its contents was not, therefore by reason of any authority. His opportunity was that of a mere servant. The doctrine of implied agency would not seem to be applicable to the facts of this case.
Is the Company, or is Clark, estopped to make defense and set up title to the stock?
The ground urged by the plaintiff in error is that of culpable negligence. The finding of the trial court that certificate No. 61 was lost or mislaid without any fault or negligence on the part of Clark or of the Company, answers this claim of estoppel unless the law is that one may not leave his property where it may be found by a servant except at the peril of losing his title thereto if the servant steals and disposes of it to another. We know of no principle of law, nor of *375 -any decision, which goes to this length. The facts do not make a case where the owner of property has put it in the possession of another with indicia of ownership so as to invoke the rule that where two innocent persons must suffer by the act of a third, he who has enabled the former to occasion the loss must sustain it. The Company, when it became the equitable owner of the stock, placed the certificate in the drawer of its president; it did not place it in the possession, real or constructive, of Tyler. Nor was there any reason existing for suspecting the integrity of Tyler. He had been an officer of the Company, trusted, and apparently deserving trust, since the year 1876. Nothing had occurred during all this time to cause the Company, or his fellow officers, to doubt his honesty and faithfulness, and so far as appears, the abstracting and using this surrendered cer-' tificate was his first act of malversation during his employment. If the Company had had reason to suspect the honesty of Tyler, a different question would be presented. It is not negligence, but ordinary care and prudence, to deal with one who has proven himself worthy of confidence in the belief that he remains honest, and trust him accordingly, even though it should turn out that he afterwards, yielding to temptation, has betrayed his trust. As remarked by Williams, J., in Ex parte Swan, 7 C. B. (N. S.), 447; “It is one thing to say that a man shall be answerable for such immediate consequences of his acts as a reasonable man might foresee and dread, and therefore shun. But it is another and very different proposition to maintain, that a man shall forfeit his property because he has done an act which will not be perilous unless others are guilty of misconduct which that act does not cause.” The injury to the Bank and to Me *376 Dowell was not the natural consequence of the leaving of the certificate in the president’s drawer, or one which might have been reasonably anticipated. The rule, and we believe the true rule, is stated by Blackburn, J., in Swan v. N. B. A. Co., 2 H. & C., 182, thus: “The neglect must be in the transaction itself, and be the proximate cause of leading the party into the mistake; and also, as I think, that it must be the neglect of some duty that is owing to the person led into that belief, or, what comes to the same thing, to the general public, of. whom the person' is one, and not merely neglect of what would be prudent in respect to the party himself, or even of some duty owing to third persons, with whom those seeking to set up the estoppel are not privy.”
It is urged that the Company ought, before issuing a new certificate to Clark, to have required a bond of indemnity from Tyler. But No. 61 was not a lost or destroyed certificate within the meaning of the statute ; nor was it outstanding. It was in the possession and custody of the Company; for the time mislaid, but still in its control. Tyler had already done respecting it all that he was to do, or could then have been required to do.
It is further insisted that, on the authority of Bank v. Railway Co., 21 Ohio St., 221, Clark having but an equitable title to the stock, cannot prevail against the Bank’s legal title. But this proposition assumes the very point in controversy, and the trouble with it is that the Bank got no title. It took its pledge from one who did not own the property; in other words, from a thief.
A review of the authorities we regard as unnecessary and content ourselves Avith the citation of the following cases: Moores v. Bank, 111 U. S. 156; Far *377 rington v. Railroad Co., 150 Mass., 406; Insurance Co. v. Railroad Co., 139 N. Y., 146; Hill v. Jewett Pub. Co., 154 Mass., 172; Knox v. Eden Musee Co., 148 N. Y;, 441; 1 Cook on Corp., Sec. 359; Barstow v. Savage Mining Co., 64 Cal., 388; Birmingham Land Co. v. Dennis, 85 Ala., 565; Swim v. Wilson, 90 Cal., 126; O’Herron v. Gray, 168 Mass., 573; Shaw v. Spencer, 100 Mass., 382.
Much stress is laid by counsel for plaintiffs in error upon the case of Railway Co. v. Bank, 56 Ohio St., 351, and it is insisted that the case at bar is ruled in their favor by that case. We think not. That was a case of over.issue by an officer having apparent authority to issue. This is a case of a stolen certificate. The substance of the holding in the case cited is, as expressed in the third paragraph of the syllabus, that the company is charged with the duty of observing care in the issue of stock, and of supervising their agents charged with the performance of the duty, and the want of care found against the corporation was that it negligently permitted its secretary to have possession of certificates of stock, signed by its president and having thereon the corporate seal, in excess of its authorized capital, and thus afforded that officer the opportunity of fraudulently issuing certificates of stock. It is apparent that this case presents a radical distinction when placed in contrast with the case at bar. There the negligence of the company was an essential feature; here it is distinctly found that the Company was not negligent. Whether the language of the opinion and syllabus, in all particulars, is or not of too broad a character we need not discuss. Suffice to say that the law of the case is the judgment of the court upon the facts found, and that, and that alone, is what is binding as a precedent. *378 The essential facts being different, the case does not apply.
The case at bar may be summed up in a paragraph. The secretary of the corporation was a holder of its stock represented by a valid certificate. He pledged the stock to the Company as security for a debt owing to it, and assigned the certificate in blank and delivered it so assigned to the Company. It was then placed by the president in his drawer in the Company’s safe. Later the secretary, by private agreement with the president, sold the certificate to him outright. Without fault of the Company, or of the president, the certificate had become mislaid. Some time after, the secretary found and fraudulently abstracted the certificate from the drawer and pledged it for a private debt to an innocent taker who accepted the security without inquiry. This pledgee took no title.
The judgment of the circuit court will be

Affirmed.

Williams, C. J., Burket, Davis, Shauok and Price, JJ., concur.