(101 South. 424)

**CAPITAL NAT. BANK v. FOURTH NAT. BANK.** (3 Div. 626.)

(Supreme Court of Alabama. June 26, 1924. Rehearing Denied Oct. 9, 1924.)

1. Pledges ⊛═6—Sales ⊛═234(3)—Generally vendor or pledgor of property other than negotiable instruments can convey no right greater than he has.

As general rule, vendor or pledgor of property other than negotiable securities can convey no greater right or title than he has.

**2. Estoppel ⬤═75—Rule stated as to effect of clothing one with apparent ownership of stock certificate as precluding from asserting ownership.**

Though certificates of corporate stock are not negotiable within rule cutting off prior equities, where owner allows another to appear as owner with power of disposition and innocent parties deal with apparent owner, they will be protected to extent that they have parted with value.

**3. Corporations ⬤═123(22) — Pledgee of corporate stock intrusting it for limited purpose to pledgor, who wrongfully surrendered it to third person for value, held entitled to it on reimbursing latter.**

Where bank surrendered corporate stock which it had held as collateral to debtor under agreement that he would use it to raise funds with which to pay portion of debt, and where debtor improperly surrendered such stock to another bank to be held as collateral, and received from it in exchange trust receipts covering cotton which had been sold and proceeds dissipated, *held*, bank originally holding such stock was entitled to recover same on paying value of trust receipt surrendered by second bank in acquiring such stock.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by the Fourth National Bank against the Capital National Bank. From a decree overruling demurrer to the bill, respondent appeals. Affirmed.

Horace Stringfellow and Steiner, Crum & Weil, all of Montgomery, for appellant.

Respondent, having surrendered security in exchange for the stock involved, is entitled to be protected as a purchaser for value. Leigh Bros. v. M. & O. R. R. Co., 58 Ala. 165; Nelson v. Owen, 113 Ala. 372, 21 South. 75; Mobile L. I. Co. v. Randall, 71 Ala. 222; Hixon v. Hetherington, 57 Ala. 165; Thompson v. Hudgins. 116 Ala. 107, 22 South. 632; Douglass v. Standard R. E. Co., 189 Ala. 223, 66 South. 614.

Weil, Stakely & Vardaman, of Montgomery, for appellee.

Appellant parted with no value and is not entitled to hold the stock as against the owner. Bank of Tupelo v. Thompson, 186 Ala. 600, 65 South. 147. A certificate of stock in ordinary form is not negotiable paper. E. Birmingham Land Co. v. Dennis, 85 Ala. 565, 5 South. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73; National, etc., Co. v. Gray, 12 App. D. C. 276, Millard v. Green, 94 Conn. 597, 110 Atl. 177, 9 A. L. R. 1610. As against the real owner a purchaser is only protected to the extent of the value with which he has parted. Donahoo H. & M. Co. v. Durick, 193 Ala. 456, 69 South. 545; Jones on Pledges, p. 365; Crawford v. Dollar S. F. & T. Co., 236 Pa. 206, 84 Atl. 694.

SAYRE, J. The trial court overruled appellant's demurrer to appellee's bill, and this appeal followed.

To state the facts in outline: The bill avers that Hall and Beale, partners engaged in the cotton business, had pledged to appellee 450 shares of the capital stock of the Montgomery Cotton Manufacturing Company to secure an indebtedness. November 10, 1920, appellee, as it had the right to do under its contract, demanded additional security, whereupon Hall and Beale pledged 180 additional shares of the Manufacturing Company's stock. Thereafter, on the same day, Hall proposed to appellee to let him have 300 shares of the stock pledged with the agreement that he would raise $30,000 on them and apply the same in partial payment of appellee's claim against his firm. Appellee in compliance with this proposal delivered 300 shares to Hall, taking from him a receipt as follows:

"Fourth National Bank, Montgomery, Ala.
                   "Date, November 10, 1920.

"Trust Receipt for Collateral Delivered to Fourth Nat. Bank, Montgomery, Ala.

"We acknowledge receipt from the Fourth National Bank of Montgomery, Ala., as agent for said Bank, stock certificates, and other documents described and listed herein, representing collateral under certain notes discounted for the undersigned by the Fourth National Bank of Montgomery, Ala., which receipts, certificates, and documents we acknowledge to be the property of the Fourth National Bank of Montgomery, Ala., held by me as agent, and subject at all times to the order of the Fourth National Bank of Montgomery, Ala., and I certify that the merchandise, goods, or articles represented by such papers or documents, or the proceeds arising from the sale hereof, or any substitution therefor, are the property of the Fourth National Bank of Montgomery, Ala., and not subject to my debts or to be used by me in any way, and such documents, or substitutes therefor. or funds arising from the sale of all or any part thereof, shall be kept separate and apart from my assets, and I bind myself to deliver such papers or documents, or the funds arising from the sale thereof, or any part thereof, or any substitution therefor, when called upon to do so by said bank, its successors or assigns, without deductions of any kind whatever.

"Certificate No. 8 to W. M. Beale for 150 shares of the capital stock of the Montgomery Cotton Manufacturing Co., Inc., of Montgomery, Ala.

"Also certificate No. 0 for 150.00 [150 shares] of the capital stock of the Montgomery Cotton Manufacturing Co., Inc., of Montgomery, Ala.

"[Signed]     Hall-Beale Cotton Co.,
                       "By Warren D. Hall."

About 5 or 6 o'clock p. m. of the same day the hypothecation of all the stock with appellee was noted on the stock book of the manufacturing company. Hall instead of

getting a loan on the 300 shares he thus obtained from appellee delivered the same to appellant as security for a pre-existing debt due to appellant by Hall and Beale. The bill avers:

"That at the time Hall pledged said stock to the Capital National Bank the Capital National Bank made no change of any kind whatsoever in its position with the Hall-Beale Cotton Company (meaning Hall and Beale heretofore mentioned) relative to the indebtedness owing it by the Hall-Beale Cotton Company; that it surrendered to Hall a trust receipt. for cotton that had been previously pledged by the Hall-Beale Cotton Company to the Capital National Bank as security for this indebtedness; * * * that the cotton for which said trust receipt was given had long prior to this time been disposed of and the proceeds thereof dissipated by the Hall-Beale Company; and that said trust receipt was at that time of practically no value."

The prayer of the bill, so far as it need be stated, was that defendant, appellant, be required to deliver the certificates of stock above mentioned to appellee, and appellee, to the end that justice might be done, submitted itself to the court and offered to pay to appellant whatever value, if any, appellant surrendered to Hall and Beale when it acquired the stock and that a reference be ordered to ascertain that value.

[1, 2] The general rule applicable to property other than negotiable securities is that the vendor or pledgor can convey no greater right or title than he has. Certificates of corporate stock are not negotiable within the rule cutting off prior equities. East Birmingham Land Co. v. Dennis, 85 Ala. 565, 5 South. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73. But the rule is general that, where the true owner holds out another, or allows him to appear, as the owner or as having full power of disposition, and innocent parties are thus led to deal with the apparent owner, they will be protected. 85 Ala. 565, 5 South. 317, 2 L. R. A. 836, 7 Am. St. Rep. 73; McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341. This protection is conceded to such a purchaser, not because he has acquired a full title, but because, on the doctrine of estoppel, some incidents of negotiability are conferred upon the stock purchased, the right of the purchaser is expended, and the title of the true owner is modified or limited to the extent necessary to reimburse the purchaser for value given for an apparent title; in other words, the apparent title is allowed to stand as security for the value the purchaser parts with in its acquisition. The cases show that this is the rule on which the courts proceed, and that, to quote the language of Mr. Pomeroy, 2 Eq. Jur. (4th Ed.) § 710:

"The courts have simply recognized the growing and universal tendency of business men, in their customary modes of dealing, to treat stock certificates as though they were in all respects negotiable instruments; and they [the courts] have felt themselves bound to give validity and effect to this general practice of merchants, as far as that could be done consistently with the established doctrines of law."

And so it was held in the leading case (McNeil v. Tenth National Bank, supra) that the purchaser in such circumstances held the stock for the full amount advanced by him in its purchase. To the same effect are Woolley v Sergeant, 8 N. J. Law, 262, 14 Am. Dec. 419, note page 427; Trust Co. v. Gray, 12 App. D C. 276; People's Bank v. Bates, 120 U. S. 556, 7 Sup. Ct 679, 30 L. Ed. 754; 2 Dan. Neg. Inst. (6th Ed.) § 1708g; 21 C. J. 1202.

Appellant relies on Nelson v. Owen, 113 Ala. 372, 21 South. 75, and Leigh Bros. v. M. & O. R. Co., 58 Ala. 165. These cases, as we read them, are not out of accord with what we have written. In the first named (Nelson v. Owen) the authority of McNeil v. Tenth National Bank and East Birmingham Land Co. v. Dennis, supra, was expressly recognized. The bill of complainant, the original owner, who sought to have full and complete legal title of stock pledged by him and wrongfully disposed of by his pledgee decreed to him, was dismissed. The quantum of right and title in the ultimate pledgee does not appear to have been put in issue. As to him the full effect of the judgment was that he had acquired rights which were due to be protected. The other case mentioned needs no special treatment. It is obviously not in point as an authority in favor of appellant.

[3] There is assertion on behalf of appellant that, because it surrendered to Hall and Beale the trust receipt for cotton which, together with other security, they had previously pledged to it, it parted with value commensurate with the value of the cotton receipted for, notwithstanding Hall and Beale, as the bill avers, had long before disposed of the cotton and dissipated its proceeds—this on the theory that at least the receipt would have afforded proof of the facts and served as a means of coercing payment for the cotton so converted by Hall and Beale. No authority is cited to sustain this proposition, nor do we think it can on reason be maintained that the mere evidence of a debt is the financial equivalent of the amount of the debt. However useful such muniment of right may be, we apprehend it has no measurable value other than the negligible value of the paper on which it is written. But we need not decide that question finally. Appellee's bill offers to reimburse appellant for whatever value, if any, it parted with, so that, on the principle stated above, appellee's bill is not without equity whether appellant parted with much, little, or nothing, and the trial court did. well to overrule ap-

pellant's demurrer. In reaching the conclusion that appellee's bill contains equity, we have proceeded upon the assumption that appellant had no notice of appellee's right and title in and to the stock pledged to it—this for the reason that the parties have so considered the case in their briefs. It does not so appear on the face of the bill.

The controlling question between the parties may be thus stated: Appellant's contention is that, because it surrendered value, viz., the cotton receipt, thereby suffering some detriment by reason of the loss of evidence against Hall and Beale, it acquired full and complete title to the stock, or, in the alternative, that it holds the stock as a valid pledge securing its entire indebtedness due from Hall and Beale, or, at least, as security to the extent of the value of the cotton covered by the receipt, notwithstanding the cotton had been previously sold by its pledgors and the proceeds dissipated by them. Appellee on the other hand contends that, conceding for the argument that appellant is in the position of a bona fide purchaser for value, it is entitled only to be reimbursed for the actual measurable value parted with. On these issues we think the law is with appellee.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.