### D. S. JACKMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101891. Promulgated June 11, 1941.

*Ellis D. Bever, Esq.,* for the petitioner.
*G. W. Reardon, Esq.,* for the respondent.

## OPINION.

Mellott: In the statement attached to the deficiency notice it is stated:

The value of the securities, which are the subject of these gifts, is their fair market value at date of gift, subject however to such discount as is reasonable on account of the hypothecated use of which they were subjected at date of gift. This discount is determined to be, not the full $120,000 indebtedness of the donor * * * for which * * * [the securities] were pledged as security, but in a reasonable discount amount of $24,000 based on donor's ability to pay, considering all the circumstances.

Finding has been made that the net gift was $9,270 rather than the amount determined by respondent. In making such finding we have not ignored the argument and authorities relied upon by respondent. Briefly summarized, his argument is: (1) When the pledgee released the stock for the purpose of securing new certificates in the name of petitioner's wife its right in the pledged property ceased

to exist; (2) if the wife had not carried out her promise to pledge the stock for her husband's debt, the creditor's only recourse would have been on the promise and it would not have had the right of sale belonging to a pledgee; (3) since the tax is an excise upon the act of the donor in making the transfer, measured by the value of the property passing from him, and since the entire *title* to the securities passed from him relieved of the pledge, he then made a gift of the securities themselves, which had a stipulated value of $129,270; and, (4) inasmuch as the only thing of value retained by petitioner was the right to have the stock applied to his debt in case he was unable to pay and defaulted on his indebtedness, such value is to be measured by his probable ability to pay off the indebtedness in the future.

Respondent relies upon the general rule that a pledgee, in order to preserve his pledge, must retain possession. 49 C. J. 896. This rule seems to be applicable in Kansas, where the transaction in question occurred. *Raper* v. *Harrison*, 15 Pac. 219; *Atkinson* v. *Bush*, 139 Pac. 393. Nevertheless, it does not seem to be determinative of the present issue. As to the stock of the creditor corporation, which it had in its possession as security for its debt and which constituted the major portion of the pledged property, it is clear that possession was retained at all times. True, new certificates were issued in the name of petitioner's wife; but she endorsed them in blank and they remained continuously in the possession of the pledgee and never left its possession for one instant. The certificates for the other shares were transmitted by the pledgee to the issuing companies with instructions to mail the new certificates to it and this was done. Neither the old nor the new certificates were ever turned over to petitioner or his wife, the wife merely endorsing the new certificates in blank after they were returned to the pledgee. Under these circumstances it can not be held that the pledgee's right in the pledged property ever ceased to exist or that it ever placed itself in the situation where its only recourse would have been on the wife's promise to hypothecate the stock after she acquired it.

We are of the opinion that petitioner endeavored to give, and actually did give, his wife only such interest as he had in the pledged property. "The general rule applicable to property other than negotiable securities is that the vendor or pledgor can convey no greater right or title than he has." *Capital National Bank* v. *Fourth National Bank* (Ala.), 101 So. 424. A pledgee has a right in the pledged property superior to any that can thereafter be given by the pledgor, *Citizens' National Bank of Ft. Scott* v. *Bank of Commerce*, 80 Kans. 205; 101 Pac. 1005; and, if the pledgor takes possession of the property with the intent to deprive the pledgee of his rights,

such act may constitute larceny. *State* v. *Hubbard*, 126 Kans. 129; 266 Pac. 939. It is obvious that petitioner intended to make a gift to his wife of only his interest or equity in the stock and that she accepted the gift knowing that she could not be given the stock itself until and unless her husband's indebtedness to the pledgee was paid. Respondent admits as much. In paragraph 5 (a) of his answer it is stated: "Admits that on January 25, 1936 petitioner made a gift to his wife, Nora E. Jackman, of his interest or equity in certain securities owned by him which were pledged to The Kansas Milling Company as collateral security." We have accordingly found that he made a gift of only such interest or equity and that it had a value of $9,270.

The applicable statute (sec. 501 (a), Revenue Act of 1932) imposes a tax upon "the transfer * * * of property by gift." We do not understand that respondent is contending there should be *added*, to the value of the property transferred, a separate value computed upon the probable ability of the donor to pay off his indebtedness. At any rate he points to no statute or regulation justifying or authorizing that any such addition to the property transferred should be made and we know of none. He assumes that the stock, having a value of $129,270, had been given to the wife, but that, because it of necessity must be left as collateral security for her husband's debt, the value of the gift should be ascertained by "discounting" the value of the stock "in a reasonable amount based on the donor's ability to pay." Since respondent has admitted and we have found that petitioner gave his wife only his interest or equity in the stock, it is perhaps unnecessary to discuss respondent's "discount" theory at any length. It may be pointed out, however, that it would be impossible to value with any degree of accuracy such a nebulous interest or right. Through the use of mortality tables, a fairly reliable prognostication of the donor's length of life may be made; yet even that is dependent upon his present state of health, family history, and many other factors not in evidence in the instant proceeding. But how may it be foretold that the donor's employer would remain in existence, that his services would be continued, and that his present income would continue at approximately its present rate? Even if all available evidence touching these factors were before us, still our attempt to find the right answer would be, at best, mere speculation. Taxation is a practical matter and should not rest upon guesswork. In addition, it may be pointed out that it seems to be incredible that a person having a net worth of $20,000 could possibly make a gift of $105,000.

Reviewed by the Board.

*Decision will be entered for the petitioner.*