ESTATE OF IRA C. COPLEY, DECEASED, THE FIRST NATIONAL BANK OF CHICAGO AND JAMES S. COPLEY, EXECUTORS OF THE WILL OF IRA C. COPLEY, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18621.   Promulgated July 18, 1950.

*Albert L. Hopkins, Esq.,* and *Harry D. Orr, Jr., Esq.,* for the petitioner.

*H. H. Hart, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency in gift taxes of the decedent for 1936 in the amount of $66,337.50 and a deficiency for 1944 in the amount of $51,955.58.   The issues for decision are whether the transfers which the petitioner made in each of the taxable years were not subject to gift taxes for those years because they were made pursuant to a binding antenuptial agreement entered into in and made effective by the marriage in 1931, and, in the alternative, whether $16,755.78 of the specific exemption of $40,000 was available to the petitioner as an offset against the 1936 and 1944 gifts. All of the facts, with an exception hereafter noted, were stipulated.

Ira C. Copley, the decedent, died on November 2, 1947.   He filed gift tax returns for 1936 and 1944 with the collector of internal revenue for the first district of Illinois.

Copley and his intended wife, Chloe Davidson-Worley, entered into an antenuptial agreement on April 18, 1931, reciting that they contemplated marrying each other; Copley owned property as indicated on an attached list; and he desired to make suitable provision for Chloe in lieu of dower and any interest in his property which otherwise she might have.   Copley agreed in consideration of the marriage and of the covenants contained in the agreement to pay Chloe "to be effective immediately after the solemnization of said marriage, the sum of one million dollars, the said sum to become and to be her sole and separate property," and Chloe agreed to accept that sum in lieu of all of her rights in the property of Copley.   The agreement further provided:

In consideration of the nature of the property set forth in the memorandum attached to and made a part of this contract of agreement, the nature and extent of which is fully understood by the party of the second part, it is the desire of the party of the second part, and it is, therefore,

Agreed that the party of the first part shall take over the management of the one million dollars this day given by him to the party of the second part, to the end that its value may be preserved and made productive.

\* \* \* It is the desire of the party of the second part, and is, therefore,

Agreed that upon her death, should she pre-decease the party of the first part, that half of her said one million dollars shall revert to the party of the first part, or in the event that his death precedes hers, that the said one half shall go to his estate.

The parties were at that time in France and on that same day Chloe executed a memorandum of agreement to the effect that as soon as she returned to the United States she would create a trust to administer the $1,000,000 for her benefit during her life and for the benefit of her legal heirs in accordance with the terms of the marriage contract to which the agreement was attached as a supplement.

The parties were married on April 27, 1931, after which they returned to Aurora, Illinois, where they continued to reside until the death of Copley.

Copley assigned to Chloe on January 1, 1936, $500,000 face amount of Southern California Associated Newspapers 6 per cent notes. He acquired those notes subsequent to April 18, 1931. Chloe, as donor, and Copley, as trustee, entered into a revocable trust agreement dated January 2, 1936, and on the same day Chloe assigned the notes to the trust. The trust thereafter received the interest on the notes. The trust was exclusively for the benefit of Chloe. It was to terminate at the death of the trustee or at the death of the donor, whichever should first occur, at which time all property was to go to the donor or her estate.

Copley transferred 5,000 shares of 6 per cent cumulative preferred stock, par value $100 per share, of The Copley Press, Inc., in trust on November 20, 1944. He and Chloe had entered into a trust agreement dated that same day reciting that it was for the purpose of giving effect in part to the antenuptial agreement of April 18, 1931; Copley had recognized and admitted his continuing obligation to comply fully with the terms of that agreement, including his obligation to set aside $500,000 for the benefit of Chloe, which would revert to him or his estate upon her death, and "For reasons of convenience, the undersigned Chloe D. Copley has from time to time agreed that compliance with said obligation of Ira C. Copley should be postponed but has never released said Ira C. Copley therefrom." The trust agreement then contained provisions whereby the property placed in trust was to be held in accordance with the antenuptial agreement.

Copley made no assignments for the benefit of Chloe between April 18, 1931, and January 1, 1936, except as set forth above.

It is hereby found from the testimony that Copley discussed at least once a year, and sometimes oftener, with his chief accountant, who had charge of his personal affairs, and at times with his lawyers, ways

and means of transferring property to comply with the antenuptial agreement; Copley delayed in making transfers to carry out the antenuptial agreement because he did not have property in his possession which he felt was suitable for the purpose; the transfers and agreements of January 1st and 2d, 1936, and the transfers and agreements of November 20, 1944, were made pursuant to and to carry out the provisions of the antenuptial agreement of April 18, 1931.

The Commissioner, in determining the deficiencies, treated the transfer of $500,000 face amount of Southern California Associated Newspapers 6 per cent notes as a taxable gift made in 1936, and the transfer of 5,000 shares of 6 per cent cumulative preferred stock, par value $100 per share, of The Copley Press, Inc., as a taxable gift in 1944 to the extent of the life interest of Chloe in that property, and he valued that life interest at $200,926. No issue is raised with respect to the valuations. Chloe died on August 1, 1949.

The petitioner recognizes that under the decisions of the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, gift taxes would be due if the antenuptial agreement had been made within a year when there was a gift tax law in effect. These parties contracted when there was no gift tax law in effect. Gifts made in 1931 were not subject to any gift tax. The petitioner contends that the antenuptial agreement became a binding contract when the parties were married on April 27, 1931; Copley became obligated at that time to make without delay the payments which he subsequently made; there was valuable and adequate consideration for that contract flowing from Chloe to Copley; and, consequently, the payments which he made in 1936 and 1944 were not taxable under any theory as gifts made for the first time in those years. He cites *Harris* v. *Commissioner*, 178 Fed. (2d) 861, certiorari granted on other points 339 U. S. 917, in which Judge Learned Hand, holding that the present value of annual payments over a period of ten years, which a divorced wife was to pay under a separation agreement, was a gift at the time of the decree, said:

> There only remains the question whether it was proper to include the commuted actuarial value of the husband's annuity at the time when the decree passed. The taxpayer's argument is that the annuity was a series of independent gifts, each maturing when made, and not to be appraised as one. This misconceives the transaction; although the payments were subject to a gift tax, they were not gifts at all, the annuity was a contract made for a valid consideration, and it is classed as a gift only because the statute says so. Once it became a contract by entry of the decree, since thereupon the taxpayer became bound to make all the payments, she did not make a new gift each month; indeed she never had any donative intent at the outset.

The fact that the payments here were to be made immediately would not distinguish the *Harris* case. The two payments here, like the

series of payments in that case, were not independent gifts, each maturing when made. Once the antenuptial contract became binding by the marriage, Copley became bound to make all of the payments and did not make a new gift each time he made a payment. The transfer of property took place in 1931, when under the contract, Chloe acquired the right to receive the payments immediately. The payments when actually made in 1936 and 1944 were but the realization by her on her rights acquired in 1931 and not gifts made in 1936 and 1944.

This situation is not like those decided in cases cited by the Commissioner in which there was a mere promise to make a gift at some future time, since here Copley was under a binding contract to make the payments which the Commissioner seeks to subject to gift tax. The fact that he was bound under all circumstances is clear. The Commissioner relies also upon the case of *John D. Archbold*, 42 B. T. A. 453. Archbold and his intended wife entered into a trust agreement, described as a "marriage settlement agreement", in which Archbold agreed to transfer to the trust $10,000 at the end of each of the next nine consecutive years. The Commissioner determined that the present value of that promise was $74,353.30 and he considered it a gift at the time of the marriage and the agreement. The wife died within 2½ years and Archbold and the trustees considered the trust agreement terminated by her death so the trustees returned the corpus of the trust to the petitioner. The petitioner argued, *inter alia*, that the promise to make additional contributions to the trust had no ascertainable value in 1936. The Commissioner made no argument and cited no cases in support of his determination that the commuted value was a gift at the time of the marriage and, under all of the circumstances, the issue was decided for the petitioner. The Commissioner's contention in the present case is not supported by that holding on the facts there present or the cases there cited. Furthermore, the more recent *Harris* case, which is in point, lays down a rule with which this Court agrees.

The conclusion has been reached that although the transaction was similar to those dealt with by the Supreme Court in the *Wemyss* and *Fahs* cases, nevertheless, the payments made in 1936 and 1944, pursuant to a binding contract entered into in 1931 were not taxable as gifts in 1936 and 1944.

The alternative contention of the petitioner does not need to be considered in view of the above holding.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissenting: This is a case of antenuptial agreement and gift tax. *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, made it altogether plain that a transfer pursuant to antenuptial contract is subject to the gift tax. The majority herein holds that such a transfer is not subject to the gift tax, apparently because of the view that a binding antenuptial contract having been made in 1931 when there was no gift tax law, the gift was then made, though the transfers, that is, the assignments of corporate stock in compliance with the antenuptial agreement, were made in 1936 and 1944 when a gift tax law was in effect. Such a conclusion, in my opinion, is directly opposed to the primary principle that a gift to be effective must be fully executed, that the words alone do not make a gift, that if anything remains to be done there is mere executory agreement, title has not passed, and until followed by surrender of possession or dominion over the subject matter, the gift is not complete. 24 Am. Jur. 741, 742; 38 C. J. S. 793–4; *Union Trust Co.* v. *United States*, 54 Fed. (2d) 152 (Court of Claims), certiorari denied, 286 U. S. 547. That was a suit to recover estate taxes from the United States on the theory certain stock had in the decedent's lifetime been conveyed as gifts *inter vivos*, therefore was not to be included in gross estate.

The decedent agreed in writing to make gifts of the stock to his wife, and assigned the certificates in blank, placed them in sealed envelopes, and delivered them to Union Trust Company, as trustee, to hold for the joint lives of decedent and his wife, for delivery to the survivor. Decedent was during his life to receive the dividends. The plaintiff contended, in effect, as does the petitioner here, that the written agreements showed intent to make absolute gifts, that they were fully consummated and completed by delivery of the stocks to the trust company. The court said, *inter alia*,

\* \* \* One of the requisites to a valid gift inter vivos is the delivery of the thing given, and the delivery must be such as to vest the donee with control and dominion over the property and to absolutely divest the donor of his possession and control. Until such delivery has been made title to the property does not vest in the donee. \* \* \*

The court held that the trustee was agent or trustee for both parties in court, that title could therefore pass to the wife only when the stocks were turned over to her in accordance with the agreements, and he was divested of dominion and control, and that therefore there was no consummation of gift. The written agreements were made in 1912. The estate tax involved was assessed under section 302 of the Revenue Act of 1924. Pointing out that under *Nichols* v. *Coolidge*, 274 U. S. 531, an estate tax could not constitutionally be applied to a gift *inter*

*vivos* (not in contemplation of death) made prior to adoption of the estate tax, the court said that the case was not in point in the instant case "where the property of the gifts passed and became vested subsequent to the effective date of the taxing statute." The plaintiff's claim for refund was therefore rejected. See also *Basket* v. *Hassell*, 107 U. S. 602.

The contract here involved provided for no immediate passage of title. but, on the contrary, it was "to be effective immediately after the solemnization of said marriage." Delivery was in fact delayed for several years. In my view, a completed gift can not be found in 1931. That the contract was enforceable does not remove this gift from the intendment of the gift tax act as contended in the *Wemyss* and *Merrill* v. *Fahs* cases, *supra;* therefore I think it was clearly taxable as such in 1936 and 1944 when delivery was consummated. The subject matter of a gift must be "wholly under the donee's power." Pomeroy Equity Jurisprudence. paragraph 1149. *Harris* v. *Commissioner*, 178 Fed. (2d) 861. upon which the majority relies, involved a contract between husband and wife in connection with divorce. We have in *Norman Taurog.* 11 T. C. 1016. *William Barclay Harding*, 11 T. C. 1051, and other cases. held that such a contract is for full consideration, not subject to gift tax. The case is therefore peculiarly without logical effect in this one. In any event, in my opinion, the whole tenor of the law of completed gift forbids the majority conclusion here. I therefore dissent.

HILL, *J.*, agrees with this dissent.