ELEANOR A. BRADFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70401.    Filed September 16, 1960.

*William Waller*, *Esq.*, and *Lawrence Dortch*, *Esq.*, for the petitioner.

*Jack D. Yarbrough*, *Esq.*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in gift tax against petitioner and an addition to the tax under section 291,

I.R.C. 1939, for the year 1938 in the respective amounts of $29,025 and $7,256.25. The deficiency and addition to tax were subsequently corrected to $14,850 and $3,712.50, respectively.

The single issue is whether petitioner's substitution of her promissory note in the amount of $205,000 for notes of her husband held by a bank in 1938 constituted a taxable gift to her husband in the amount of $205,000 in the year 1938.

In a companion case, *J. C. Bradford*, Docket No. 70400, decided this day, respondent determined in the alternative that if this transaction did not result in a gift to J. C. Bradford in 1938, the release of a part thereof for less than its face value in 1946 was taxable as ordinary income to J. C. Bradford in 1946.

Some of the facts were stipulated and it was agreed by the parties that the entire record in the prior cases of J. C. Bradford, Docket No. 35990, and Eleanor A. Bradford, Docket No. 36895, which were reported in *J. C. Bradford*, 22 T.C. 1057, are incorporated by reference in this proceeding.[1]

FINDINGS OF FACT.

The stipulated facts are incorporated herein by reference.

Eleanor A. Bradford, hereafter referred to as petitioner, and her husband, J. C. Bradford, hereafter referred to as J. C., were married in 1926 and reside in Nashville, Tennessee. Pursuant to a request dated August 12, 1957, from the office of the district director of internal revenue at Nashville, petitioner on August 28, 1957, filed a gift tax return for the calendar year 1938 reporting the transaction hereafter detailed but disclosing no gift tax liability.

J. C. was a member of J. C. Bradford & Co., a partnership engaged in the investment banking and securities business in Nashville. The partnership was a member of the New York Stock Exchange. In addition, J. C. was a partner in an insurance agency located in Nashville.

Prior to and during 1938, J. C. was indebted in a substantial amount to the American National Bank, Nashville, hereafter referred to as the bank. During this time, J. C. had been a good customer of the bank and the officers of the bank were willing to cooperate with him concerning the retirement of his obligations to the bank. On October 26, 1938, the New York Stock Exchange adopted a rule which required each general partner in a member

---

[1] The prior proceeding involved the same series of transactions here involved, wherein the respondent attempted to tax the forgiveness of a part of this indebtedness for less than its face value as ordinary income to J. C. Bradford, or in the alternative to Eleanor A. Bradford, in 1946. A more detailed explanation of the prior cases will be found in our opinion in *J. C. Bradford*, Docket No. 70400, referred to above.

firm to submit a detailed account of his indebtedness. At this time J. C.'s indebtedness to the bank totaled $305,000, evidenced by his promissory notes. He feared that this large bank indebtedness would cause J. C. Bradford & Co. to lose its seat on the exchange. This would seriously curtail his earning power.

Thereupon, J. C. requested the bank to substitute a promissory note signed by his wife, the petitioner, for $205,000 in lieu of his own notes for that amount. The bank agreed. On November 25, 1938, petitioner signed an interest-bearing, negotiable demand note payable to the bank, which was dated November 1, 1938, in the amount of $205,000. This note was delivered to the bank by J. C., along with his own notes of $53,000 and $47,000, which were endorsed by petitioner, whereupon the bank returned to J. C. his own notes totaling $305,000, which were marked paid. The collateral which had been on J. C.'s prior notes of $305,000 was placed on the $205,000 note signed by petitioner. Petitioner did not receive any monetary consideration for the execution of her note in the amount of $205,000.

The collateral supplied by J. C. for the $205,000 note signed by petitioner consisted of an assignment of (1) his one-third interest in the insurance agency of Davis, Bradford & Corson; (2) a life insurance policy on his life in the face amount of $150,000; (3) a certificate of stock representing 1,900 shares of the common stock of the Tennessee Central Railway Co.; (4) 1,900 shares of American Locomotive common stock; (5) 2,000 shares of Lockheed common stock; (6) 100 shares of Continental Rolling and Steel Foundry common stock; and (7) 13 shares of the National Life and Accident Insurance Company. J. C. testified that in 1938 the total value of the above shares of stock was about $128,000 and the value of his one-third interest in the insurance agency was about $55,000. In addition to the above assets, J. C. owned an interest in the firm of J. C. Bradford & Co., including a one-half interest in a seat on the New York Stock Exchange, and personal effects, automobiles, and other personal property.

When J. C. requested petitioner to execute the note for $205,000, he explained to her that he was in a "predicament" because of the New York Stock Exchange requirements. He advised her that the bank would accept a note signed by her and, further, that the bank would then release his notes in an equal amount.

At the time petitioner executed the note for $205,000 her net worth was approximately $15,780, which consisted of an equity of approximately $12,000 in the family residence, the sum of $1,280 in a margin account in the J. C. Bradford & Co. brokerage office, and

personal effects having an estimated value of $2,500. The bank was aware of petitioner's net worth at the time. Petitioner was not employed and had no independent source of income, nor the prospects of any inheritance except from her husband.

In 1940, at the bank's request, petitioner executed two notes to replace the $205,000 note. One note was executed for $105,000 upon which all the collateral that had been on the $205,000 note was placed, and another note was executed for $100,000 which was unsecured. In 1943, the bank was required by a bank examiner to write off $50,000 of the unsecured $100,000 note which had been executed by petitioner in 1940.

In 1946, J. C. was advised by the bank that it was willing to sell the unsecured note of $100,000 signed by petitioner for $50,000, which was its then book value. J. C. decided to purchase the note, and in the hope of avoiding tax liability on the transaction he persuaded a relative to purchase the note with funds furnished by J. C. and petitioner. The note was purchased by a relative of J. C.'s with $30,000 or $31,000 furnished by J. C., and $19,000 or $20,000 furnished by petitioner. The relative made no effort to collect the note from either petitioner or J. C.

### OPINION.

The issue here is whether petitioner's substitution of her note in the amount of $205,000 for notes of her husband of equal amount held by a bank in 1938 constituted a taxable gift in the amount of $205,000 by petitioner to her husband in 1938.

Petitioner contends that the transaction did not constitute a transfer of property by gift within section 501(a) of the Revenue Act of 1932, because the note executed by petitioner and delivered to the bank was not "property" in her hands, and, further, that even if she did transfer property to her husband by gift in 1938, the value of the property transferred was substantially less than the exemption and exclusion aggregating $45,000 allowable under sections 504 and 505, so there is no gift tax liability.

Respondent's position is that the subject of the gift was the entire transaction whereby petitioner's husband was relieved of his indebtedness by the execution and delivery of petitioner's note to the bank, thereby resulting in a transfer of economic benefits which would qualify as a "gift" in the broad and comprehensive sense of that word as used in the statute.

The controlling statute is the Revenue Act of 1932, as amended, sections 501 *et seq.*, the pertinent parts of which are set out in the

footnote.[2]  So far as applicable here, the statute imposes a tax upon the transfer of property by gift; and the tax shall apply whether the transfer is direct or indirect, and whether the property is real or personal, tangible or intangible.  If property is transferred for less than adequate and full consideration, the amount by which the value of the property exceeds the value of the consideration is deemed a gift subject to the tax.  If the gift is made in property, its value on the date of the gift is controlling.  The first $5,000 of gifts of present interests to any one person in any one year is excluded, and a taxpayer is entitled to a $40,000 lifetime exemption.

We are of the opinion that the transactions outlined in our Findings of Fact did not constitute a taxable gift from petitioner to her husband in the year 1938 within the purview of the statute.  We have found no gift tax cases involving facts similar to those here present, but most gift tax cases must be decided on their own facts anyway.  Various general principles have developed through case law and the regulations, and our conclusion is based on the application of some of these principles which seem founded on common sense to the facts in this case.

The gift tax is an excise tax on the transfer of property without adequate and full consideration.  Gift tax liability is dependent on the transfer of property by the donor, not the receipt of property by the donee, and the measure of the tax is the value of the property passing from the donor at the time the transfer is completed. *Estate of Koert Bartman*, 10 T.C. 1073.  See also Regs. 79, arts. 1–3, relating to the gift tax under title III of the Revenue Act of 1932, as amended.  While the presence of donative intent on the part of the

---

[2] SEC. 501.  IMPOSITION OF TAX.

(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *

\* \* \* \* \* \* \*

SEC. 503.  TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

SEC. 504.  NET GIFTS.

\* \* \* \* \* \* \*

(b) GIFTS LESS THAN $5,000.—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

SEC. 505.  DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:

(a) RESIDENTS.—In the case of a citizen or resident—

(1) SPECIFIC EXEMPTION.—An exemption of $40,000 less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years.

donor is said no longer to be a necessary element to make a transfer subject to gift tax, as it had always been considered to be in the common law connotation of gifts, the transfer must be donative in character, and we think donative intent may still be a material factor in determining whether a taxable gift has been made. See *Sarah Helen Harrison*, 17 T.C. 1350, 1357. It is true that application of the tax is determined more from the objective facts and circumstances of the transfer and what was accomplished, rather than the subjective motives of the donor, *Commissioner* v. *Wemyss*, 324 U.S. 303, but the objective standards used in the tax concept of a gift in effect supply the necessary donative intent of which the donor may not have been conscious. But in any event it seems clear that to constitute a gift for tax purposes there must be a transfer of property owned by the donor with a clear and unequivocal intent on the part of the donor to divest himself presently of the property transferred, and dominion and control thereof. 5 Mertens, Law of Federal Gift and Estate Taxation, secs. 34.01 *et seq.*

The facts and circumstances surrounding the transaction here involved do not convince us that petitioner intended to divest herself of any property or interest therein owned by her in 1938, or that any of the parties involved anticipated that any of her property would ever be used to satisfy the obligation to the bank. In the first place she did not own property in 1938 that would have come anywhere near satisfying the obligation to the bank, and she had no prospects of acquiring any except through her husband. Secondly, the entire transaction was arranged by J. C., his collateral was retained as security for petitioner's note, and he testified that it was understood that the bank would look first to his collateral for liquidation of the obligation, and he hoped and expected that the collateral would increase sufficiently in value to cover the entire obligation. J. C. paid the interest on the loan and it is reasonable to assume that all parties involved looked to J. C.'s assets and his earning power to liquidate the loan.

This does not mean that petitioner was not obligated on the indebtedness evidenced by her note. We assume the bank could have taken judgment against her on the note had it not been paid, and levied on her property to help satisfy the judgment, and that it probably would have done so had that course of action become necessary. But unless and until such action was taken we do not believe petitioner parted with, or intended to part with, dominion and control of any property owned by her which would give rise to a gift tax.

Granted that section 501 is comprehensive enough to "include property, however conceptual or contingent," *Smith* v. *Shaughnessy*,

318 U.S. 176, and to reach any passage of control over the economic benefits of property, *Estate of Sanford* v. *Commissioner*, 308 U.S. 39; nevertheless, no matter how intangible, the donor must own a property right or interest which is capable of being, and is, transferred. *Commissioner* v. *Mills*, 183 F. 2d 32 (C.A. 9, 1950), affirming 12 T.C. 468. Petitioner transferred no property or interest in property in 1938 but only made a promise to pay in the future if called upon to do so. *John D. Archbold*, 42 B.T.A. 453. The fact that J. C. may have derived some economic benefit in 1938 as a result of this promise is not controlling. Regs. 79, art. 1.

This case presents a situation different from those present in *Estate of Ira C. Copley*, 15 T.C. 17, affd. 194 F. 2d 364 (C.A. 7, 1952), and *Paul Rosenthal*, 17 T.C. 1047, reversed on other grounds 205 F. 2d 505 (C.A. 2, 1953). In those cases there was a definite obligation to pay a fixed amount, whereas here there was no certainty in 1938 that petitioner would ever have to pay anything.

We hold that petitioner did not make a transfer of property by gift in 1938. Cf., *Minnie E. Deal*, 29 T.C. 730. We might add, as suggested in *D. S. Jackman*, 44 B.T.A. 704, that taxation is a practical matter and it seems incredible that a person having a net worth of only $15,780 could make a gift of $205,000.

*Decision will be entered for the petitioner.*