**COMMISSIONER OF INTERNAL REVE-
NUE v. COPLEY'S ESTATE et al.**

No. 10426.

United States Court of Appeals
Seventh Circuit.

Feb. 26, 1952.

Ellis N. Slack, Acting Asst. Atty. Gen., Hilbert P. Zarky, Special Asst. to the Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Special Assts. to the Atty. Gen., for petitioner.

Albert L. Hopkins, Harry D. Orr, Jr. and T. Eugene Foster, all of Chicago, Ill., William C. Childs, Chicago, Ill., for respondents.

Before MAJOR, Chief Judge, KERNER and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is a petition by the Commissioner of Internal Revenue to review and reverse a decision of the Tax Court, entered August 11, 1950, exonerating respondents as the executors of the estate of Ira C. Copley from the payment of a gift tax for the years 1936 and 1944.

The decedent (sometimes referred to as the taxpayer) and his intended wife, Chloe Davidson-Worley, on April 18, 1931, while in Paris, France, in contemplation of marriage and in consideration thereof entered into an antenuptial agreement by which "the said party of the first part [Copley] hereby agrees to pay to said party of the second part [the prospective wife], to be effective immediately after the solemnization of said marriage, the sum of one million dollars, *the said sum to become and to be her sole and separate property.*" (Italics ours.) The agreement continued, "In consideration of the payment to her of the said sum of one million dollars, the party of the second part agrees that she will accept and does accept the said sum in lieu of any and all rights, or claims of dower, inheritance and descent in and to the real property of the party of the first part now owned or that may hereafter be acquired by him, and in lieu of any and all other claims which might otherwise arise or accrue to her by reason of said marriage * * *." The party of the second part also agreed, upon the request of the party of the first part, to execute all and any proper instruments of conveyance in order to enable him to sell or convey real estate owned or afterward acquired by him. And it was provided that in the event of

her death prior to his, one-half of the said one million dollars should revert to him or, in the event of his death prior to hers, that said one-half should go to his estate.

The parties were married on April 27, 1931, after which they returned to the United States and took up their residence and domicile at Aurora, Illinois, which had long been the domicile and residence of Copley.

On January 1, 1936, Copley assigned and transferred to his wife notes of Southern California Associated Newspapers in the face amount of $500,000. On the following day, the wife entered into a revocable trust agreement with Copley as trustee, and assigned the notes to the trust, to terminate at the death of Copley or his wife, whichever should first occur, at which time the trust property was to go to the wife or her estate.

On November 20, 1944, Copley transferred to his wife cumulative preferred stock of the Copley Press, Inc., in the face amount of $500,000, under a trust agreement entered into between the parties. This agreement recited that "the said Chloe D. Copley does hereby agree and acknowledge that said Ira C. Copley, has, in all manners, performed the agreements on his part to be kept and performed as contemplated in said antenuptial agreement * *."

The Commissioner determined a deficiency in the gift taxes of the taxpayer for the years 1936 and 1944, on the premise that the transactions in those years were transfers "of property by gift" under Sec. 501 of the Revenue Act of 1932, which became effective June 6 of that year. (The present section is the same in all material respects, 26 U.S.C.A. § 1000(a).) The Tax Court decided in favor of the taxpayer, two members dissenting. 15 T.C. 17.

The Commissioner poses the question for decision thus: "Were the gifts completed in the year when taxpayer promised to make the transfers * * *, or in the years when he actually made the transfers * * *?" On the other hand, respondents pose the question thus: "Did the discharge in 1936 and 1944 of the obligation created in 1931 by the antenuptial contract

constitute a taxable gift within the meaning of the Revenue Act of 1932 * * *?"

We think the Commissioner in the question as posed, as well as in his brief, over-simplifies the situation. Typical of numerous statements in his brief are: "In this case taxpayer's agreement to transfer property remained wholly executory until after the gift tax statute was enacted"; "The agreement * * * remained wholly executory for several years"; "The taxable event is the 'transfer * * * of property,' not the creation of an unsecured obligation to transfer property in the future," and "The agreement remains wholly executory, and the 'transfer * * * of property' for tax purposes takes place when the property is actually transferred."

Copley in 1931 did not agree to transfer property to his wife in 1936 or 1944 or any other year. What he did was to obligate himself unconditionally to pay her "immediately after the solemnization of said marriage, the sum of one million dollars," which obligation became effective upon their marriage nine days later. And the nature of the transaction is not altered by the fact that Mrs. Copley at a subsequent time agreed to accept corporate stocks and notes in lieu of that which Copley had promised.

Under the law of Copley's residence and domicile (Illinois), there is no question but that the agreement of the parties, upon their marriage, became a binding and legally enforceable obligation. We need not cite cases in support of this proposition because it is so conceded by petitioner. Copley's obligation to pay his wife one million dollars the next day after their marriage was a debt and possessed all the indicia of a promissory note payable on demand. She could have assigned and conveyed good title to the instrument which evidenced his obligation to pay, and either Mrs. Copley or her assignee could have maintained an action against Copley and recovered a judgment. And it can hardly be questioned but that Copley by the obligation thus assumed depleted the net worth of his estate and that the net worth of his wife's estate was augmented, each to the extent of one million dollars.

Thus, the rights and obligations of Copley and his wife had become definitely fixed more than one year prior to the enactment of the gift tax act of 1932. True, at that time Copley had not discharged the contractual debt or obligation which he owed to his wife and, so far as the record discloses, she had made no effort to enforce payment. And any reason why discharge of the obligation was delayed we think immaterial. The point is that his wife in 1936 and 1944 agreed to and did accept on each occasion $500,000 in securities in discharge of Copley's obligation and in lieu of the money which he was obligated to pay her. It is contrary to reason and common sense to say that the delivery of such property by Copley in 1936 and 1944, and its acceptance by his wife, was other than a discharge of the 1931 obligation. However, unrealistic as it appears upon its face, the Commissioner contends that the transactions during the later years were transfers "of property by gift."

We start out with a decision of the Tax Court in favor of the taxpayer. As was said in Commissioner v. Wemyss, 324 U.S. 303, 307, 65 S.Ct. 652, 654, 89 L.Ed. 958, concerning a similar decision by the Tax Court, "Its conclusion on the issue before it was no less to be respected than were the issues which we deemed it was entitled to decide as it did in Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239 [88 L.Ed. 248]; Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249 [88 L.Ed. 171]; Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U.S. 119, 65 S.Ct. 169 [89 L.Ed. 113]."

The Commissioner places much reliance upon the Wemyss case and Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963, decided by the Supreme Court on the same date. The Tax Court in the instant case distinguishes those cases on the ground that "These parties contracted when there was no gift tax law in effect. Gifts made in 1931 were not subject to any gift tax." In those cases the transfer of the property held to be "by gift" related to the performance of an antenuptial agreement but a study of the two opinions makes it plain that the court was considering the transaction as a whole, that is, the agreement and its performance, both of which took place simultaneously in the Wemyss case and within the same taxable year in the Fahs case.

The reasoning of both cases, Wemyss case, 324 U.S. at page 304, 65 S.Ct. at page 653, 89 L.Ed. 958, Fahs case, 324 U.S. at page 310, 65 S.Ct. 655, 89 L.Ed. 963, is predicated solely upon the court's interpretation of Sec. 503 of the gift tax act of 1932, which reads as follows: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

The court in each case held that the receipt of property for the release of marital rights did not constitute "an adequate and full consideration in money or money's worth" under the section just quoted. In the absence of this provision, upon which the court bottomed its reasoning and its conclusion, there is no reason to think that the court would have held as it did; in fact, it is more reasonable to believe that it would not have done so. It is also interesting and perhaps pertinent to note that one member of the court dissented in the Wemyss case and four members in the Fahs case. In the former, the transfer of the property was made prior to and in contemplation of marriage, while in the latter an arrangement was made on the day prior to marriage and performance was had ninety days thereafter by the creation of a trust for the wife's benefit. This distinction in the factual situation, as we understand, increased the number of dissenters from one to four. As is pointed out in the dissenting opinion in the Fahs case [324 U.S. at page 314, 65 S.Ct. 655, 658, 89 L.Ed. 963], "Petitioner was obligated to create the trust upon consideration of the relinquishment of marital rights and did so, and hence this is not a case involving marriage alone as consideration."

██ In the instant situation, the facts are far more unfavorable to the Commissioner. Certainly, when the asserted transfers were made in 1936 and 1944, marriage had nothing to do with the consideration—that had been consummated in 1931—and it is equally certain that there was no relinquishment of marital rights because that also was consummated at the time of marriage, all of which emphasizes that the asserted transfers in 1936 and 1944 were none other than the discharge of a contractual obligation. Of more importance, however, is the fact that the gift tax statute of 1932, including of course Sec. 503, 26 U.S.C.A. § 1002, upon which the decisions in Wemyss and Fahs rest, was enacted subsequent to the contract between Copley and his wife. To hold, as the Commissioner would have us do, that these decisions are controlling in the instant situation would require a retroactive application of Sec. 503, which we think is not permissible. See Sec. 501(b) of the Revenue Act of 1932.

The Commissioner also professes to find support for his position in Taft v. Commissioner, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393. It is significant that neither the majority members of the Tax Court nor the dissenters referred to this case. We suspect that the reason for this is that it was not considered to have any bearing upon the instant situation; in fact, we think if anything it militates against the Commissioner's contention. In that case, Mrs. Taft, the decedent, promised to make payments to certain charitable institutions which became binding obligations under the law of the State of Ohio. Such promises were not performed during her lifetime but the payments promised were made by her executors. They sought, in calculating the estate tax, to deduct such payments from the value of the gross estate under Sec. 303(a) (1) and (3), 26 U.S.C.A. § 812 (see footnote, at page 353 of 304 U.S., at page 893 of 58 S.Ct., 82 L.Ed. 1393). The estate tax law of 1924 included for the first time a provision similar to that incorporated in the gift tax law of 1932 (to which we have previously referred), making such items of indebtedness deductible only where they were "incurred or contracted bona fide and for a fair consideration in money or money's worth", at page 356 of 304 U.S., at page 894 of 58 S.Ct., 82 L.Ed. 1393. The court, referring to previous Acts, stated, at page 356 of 304 U.S., at page 894 of 58 S.Ct., 82 L.Ed. 1393: "Under these Acts the claims in question would have been deductible as enforceable by state law irrespective of the nature of the consideration. The Act of 1924 altered existing law and authorized the deduction of claims against an estate only to the extent that they were 'incurred or contracted bona fide and for a fair consideration in money or money's worth.'" It was for this reason that the court held the items non-deductible and it was for the same reasons, as heretofore shown, that the court held in the Wemyss and Fahs cases (heretofore discussed) that the transfers in those cases were not "by gift." By the same reasoning, the gift tax act of 1932 is not applicable to an obligation created prior to its enactment. The court also denied the deduction under subsection (3), at page 358 of 304 U.S., at page 895 of 58 S.Ct., 82 L.Ed. 1393, on the ground that it applied only to testamentary dispositions. In that connection the court used language relative to transfers, now relied upon by the Commissioner, which is wholly inapposite to the question here.

The Commissioner, relying on Taft and other cases, states in his brief, "If taxpayer had died before carrying out the antenuptial agreement, the wife's contractual claim under that agreement to receive a part of his property clearly would not have been deductible from taxpayer's estate for estate tax purposes." That perhaps is correct but, if so, it is because of the provision in the estate tax law dating from 1924, which precluded the deduction unless it was in discharge of an obligation "for a fair consideration in money or money's worth." In the absence of such a provision, as we have shown from the Taft opinion, it would be deductible if enforceable by State law. In the instant situation, the Commissioner seeks to apply a similar provision in the gift tax law which was not enacted until after Copley's obligation became fixed.

The Commissioner also cites a number of cases, such as Merrill v. Fahs, 324 U.S. 308, 65 S.Ct. 655, 89 L.Ed. 963, and Sanford's Estate v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, in which it has been stated that the gift tax was supplementary to the estate tax and that the two are in pari materia and must be construed together. As the court stated in the Fahs case, 324 U.S. at page 311, 65 S.Ct. 656, 89 L.Ed. 963, "The phrase on the meaning of which decision must largely turn—that is, transfers for other than 'an adequate and full consideration in money or money's worth'—came into the gift tax by way of estate tax provisions." But certainly that principle can have no application between 1924, when the provision was inserted for the first time in the estate tax law, and 1932, when the gift tax law was enacted.

Neither do we agree with the Commissioner's theory that we must either hold that there was a transfer "by gift" in 1936 and 1944, when Copley discharged the obligation to his wife, or in 1931, when the obligation was created. All we are concerned with is whether the transactions in 1936 and 1944 were transfers "by gift." Certainly the contract between Copley and his wife in 1931, whatever it be characterized, was not a transfer "by gift" as that term was defined in a law subsequently enacted. Whether it was a gift by State law, common law or in ordinary connotation is a question of no pertinency at the moment.

The taxpayer, as did the Tax Court, in our opinion places greater reliance upon Harris v. Commissioner, 2 Cir., 178 F.2d 861, than it merits. It does, however, furnish some support for the taxpayer's contention. There, the taxpayer entered into an agreement with her husband to pay him $5,000 a year for a period of ten years as part of a settlement made preliminary to a divorce proceeding between the parties. The obligation thus incurred by the wife was conditioned upon the entry of a decree of divorce. The court held that the promises contained in the agreement survived the provisions of the divorce decree and that the promise to pay on the part of the wife constituted a transfer "by gift" and was, therefore, subject to a gift tax. The point pertinent to the instant situation was whether the gift was taxable for the year in which the promise was made or for the years in which the separate payments were made—more specifically, whether the gift was taxable in the year when the obligation was created or in the respective years when payments were made in discharge of the obligation. The court held that the gift was taxable in the year the obligation was created. Strangely enough, the position of both the taxpayer and the Commissioner in that case were just the opposite of what they are here. There, the taxpayer argued that the transaction constituted a series of independent gifts, each maturing when made—in other words, that the obligation did not constitute a gift but that it was only the separate payments as they were made which would fall into that category. On the other hand, the Commissioner argued that the obligation constituted intangible property and was effectively transferred to the donee in the year of its creation. The argument continued, "It was unquestionably fully assignable by him at and from that time and even in the event of his death was unqualifiedly payable to his assigns or his estate. Taxpayer's obligation was absolute and full, subject to no contingency and expressly bound her estate in the event of her death; collectibility did not condition it, in view of her ample assets and the security assigned to him."

The Court of Appeals decision in the Harris case was reversed by the Supreme Court, 340 U.S. 106, 71 S.Ct. 181, 182, 95 L.Ed. 111, which held that the transaction in question was not subject to a gift tax. The basis for the holding, as we understand, is that the settlement agreement between the taxpayer and her husband became merged in the subsequently entered decree for divorce; that it was the decree and not the agreement which determined the rights and obligations of the parties and that the provision in the gift tax law relative to agreements for "an adequate and full consideration in money or money's worth" was not applicable. In view of the

reasoning of and the conclusion reached by the Supreme Court, there was no occasion, of course, to consider or decide when the gift was made, that is, whether in the year the obligation was created or in the years when the obligation was discharged; therefore, the decision and reasoning of the Court of Appeals on this point were left undisturbed.

We have examined other cases cited by the Commissioner, typical of which is Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct 369, 77 L.Ed. 748, where the donor was under no binding legal obligation to make a transfer. In such cases it has been held that a completed gift is consummated only upon actual delivery since there is no enforceable right in the donee to receive. Such cases do not aid the Commissioner here where, as we have shown, the donor in 1931 created an obligation which he was without power to retract and which conferred upon the donee an enforceable right.

This case, unlike some cases, is untainted with any suspicion of fraud or an effort to evade taxation. A bona fide transaction took place between the parties, by which he became obligated to pay and she entitled to receive. By reason of a law subsequently enacted, it is now attempted to tax the transactions which in any fair appraisement were nothing more than a consummation of his obligation to pay and her right to receive. The question presented furnishes the premise for a first-class argument on both sides, but we reach the conclusion that it was correctly decided by the Tax Court.

The petition for review is denied and the decision of the Tax Court affirmed.

KERNER, Circuit Judge, dissenting.

It is with regret that I find myself under the necessity of dissenting from my associates. The Revenue Act of 1932 (§ 501) is clear and unambiguous. It imposes a tax on transfers of property by gift, and since taxation is an intensely practical matter, the solution of our problem must be found in the statutory language.

The majority assume that the obligation to pay $1,000,000 was the equivalent of $1,-000,000, having the immediate effect of depleting the net worth of the husband's estate and augmenting that of the wife by that precise amount. That I cannot understand. That the agreement was not self-executing is evidenced by the fact that thirteen years elapsed between the date of the promise and the date the wife actually came into possession of the full amount of the fund agreed to be turned over to her upon her marriage.

To me it is clear that the taxable event is the transfer of property. The essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title, Estate of Sanford v. Commissioner, 308 U.S. 39, 43, 60 S.Ct. 51, 84 L.Ed 20, and whatever may have been the equitable rights of the wife, until the Southern California notes and the preferred stock of the Copley Press were actually transferred in 1936 and 1944, the taxpayer remained and was the owner of the notes and stock. He had command over and enjoyed the economic benefits of the property.

As I construe the Act, the tax is to be imposed on the transfer of property, not on the promise to transfer, regardless of the enforceability of that promise under the law of Contracts. It is the transfer of property which is taxable as a gift, not the promise to transfer, that is to say, the determinative factor is not the contract of 1931. And since the consideration for the promise, which we must construe in accordance with the statutory definition, is not adequate in money or money's worth, so that the transfer when actually made is, under the terms of that definition deemed a gift, then I think the transfers were not exempt—instead they were subject to the gift tax. I do not consider that this construction of the Act renders it retroactive. Retroactive effect would have been given if Congress had, by the Act, attempted to tax transfers previously made, as it did by the Act of 1924, held invalid or inoperative as to transfers by gift consummated before its enactment. See 2 Paul, Federal Estate and Gift Taxation (1942) p. 962. Here the actual "transfers by gift" were not consummated until after the enactment.