981 F.2d 991
 71 A.F.T.R.2d 93-2145, 61 USLW 2418,
93-1 USTC P 60,126
 John O. IRVINE and First Trust National Association, a
national banking corporation, as co-personal
representatives of the Estate of Sally
O. Irvine, Appellees,
v.
UNITED STATES of America, Appellant.
 No. 89-5616.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 6, 1992.
Decided Dec. 28, 1992.
 
 Michael L. Paup, Washington, DC, argued (Shirley D. Peterson, Gary R. Allen, Jonathan S. Cohen and Calvin C. Curtis, Dept. of Justice, on the brief), for appellant.
 Phillip H. Martin, Minneapolis, MN, argued (Mary J. Streitz, Minneapolis, MN, and Cole Oehler and Richard H. Kyle, St. Paul, MN, on the brief), for appellees.
 Before LAY,* Chief Judge, BRIGHT, Senior Circuit Judge, McMILLIAN, ARNOLD,** JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, BEAM, LOKEN, and HANSEN, Circuit Judges, En Banc.
 BOWMAN, Circuit Judge.
 
 
 1
 The United States appeals from the order of the District Court granting summary judgment in favor of John O. Irvine and First Trust National Association (taxpayers) as the personal representatives of the Estate of Sally Ordway Irvine (Mrs. Irvine) and directing the government to refund federal gift taxes and interest paid by Mrs. Irvine for the third quarter of 1979 and the third quarter of 1980. For reversal, the government argues the District Court erred in holding that Mrs. Irvine's partial disclaimer in 1979 of a remainder interest in a trust created by her grandfather in 1917 was not subject to federal gift tax, I.R.C. §§ 2501-2524 (1988).
 
 
 2
 A three-judge panel of this Court, with one judge dissenting, ruled in favor of the government. Irvine v. United States, 936 F.2d 343 (8th Cir.1991) (subsequent history omitted). The Court granted taxpayers' suggestion for rehearing en banc, thereby vacating the panel opinion. We now affirm the order of the District Court.
 
 I.
 
 3
 The underlying facts are not disputed. Mrs. Irvine was a granddaughter of Lucius P. Ordway. In January 1917 Lucius P. Ordway established an irrevocable inter vivos trust. The trust income was to be paid to Ordway's wife, Jessie G. Ordway, and their five children for their lives. The trust also provided that if any of Ordway's children died before the termination of the trust, that child's issue and the child's surviving spouse, as long as the surviving spouse remained unmarried, would receive the child's share of the trust income. On the death of the last surviving life beneficiary, the trust would terminate and the trust corpus would be distributed to the grandchildren, per capita. If any of the grandchildren died with issue before the termination of the trust, that grandchild's share would be distributed in equal portions to his or her surviving issue. Mrs. Irvine became aware of her contingent remainder interest in the trust when she turned 21 in 1931.
 
 
 4
 In June 1979 Katharine G. Ordway, who was Mrs. Irvine's aunt and the last surviving child of Lucius P. Ordway, died unmarried, and the trust terminated. Twelve Ordway grandchildren, including Mrs. Irvine, were living at the time of Katharine G. Ordway's death. Because one grandchild had died with issue, the trust corpus was to be divided into thirteen shares. In August 1979, about two months after Katharine G. Ordway's death, Mrs. Irvine disclaimed part of her share of the trust corpus. It is undisputed that Mrs. Irvine's partial disclaimer was valid under Minnesota law. Minn.Stat. § 501.211 (1988) (valid disclaimer if filed in Minnesota district court within six months of event which causes disclaimant to be finally ascertained and interest indefeasibly fixed), repealed by 1989 Minn.Laws, ch. 340, art. 1, § 77 (replaced by Minn.Stat. § 501B.86 (1990), which changed the deadline to nine months effective January 1, 1990). As a result of the partial disclaimer, Mrs. Irvine was treated, with respect to the disclaimed interest, as if she had died before the termination of the trust, and her five children thus received, as provided by the trust instrument, the disclaimed portion of her share of the trust corpus.
 
 
 5
 On audit of Mrs. Irvine's gift tax return for the third quarter of 1979, the Internal Revenue Service (IRS) took the position that the disclaimer effected a taxable gift by Mrs. Irvine to her children. Mrs. Irvine consequently paid, under protest, the gift tax asserted to be due on the disclaimer, as well as the accrued interest on the deficiency, and filed a timely claim with the IRS for a refund. Later the IRS notified Mrs. Irvine that, because the adjustments made to her gift tax return for the third quarter of 1979 on account of the disclaimer had reduced the amount of unified credit available to her, she owed additional gift taxes for the third quarter of 1980. She paid these additional taxes and accrued interest, and made another timely filing with the IRS for a refund. In March 1987 the IRS disallowed both of the refund claims, and in November of that year Mrs. Irvine died.
 
 
 6
 In February 1988, taxpayers filed the present action seeking a refund of the gift taxes and interest paid. See I.R.C. § 7422 (1988); 28 U.S.C. § 1346(a)(1) (1988). On cross-motions for summary judgment, the District Court ruled in favor of taxpayers, holding they are entitled to a refund of the gift taxes and interest paid for the third quarter of 1979 and the third quarter of 1980, together with the accrued interest on those amounts. A final judgment was entered for taxpayers in the total amount of $22,748,250.43, plus interest from the date of judgment. This appeal followed.
 
 II.
 
 7
 We review de novo the district court's decision to grant summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); McCuen v. Polk County, 893 F.2d 172, 173 (8th Cir.1990). In the present case, the relevant facts are not disputed.
 
 III.
 
 8
 The question on which this appeal turns is whether Mrs. Irvine's 1979 partial disclaimer of her contingent remainder interest in an irrevocable trust created in 1917 (when there was no federal gift tax) effected a gift to her children for federal gift tax purposes. The government contends that it did, basing its position on the application of Treasury Regulation § 25.2511-1(c)(2), which provides in pertinent part:
 
 
 9
 In the case of taxable transfers creating an interest in the person disclaiming made before January 1, 1977 ... a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be unequivocal and effective under the local law. There can be no refusal of ownership of property after its acceptance.
 
 
 10
 Treas.Reg. § 25.2511-1(c)(2) (as amended in 1986) (emphasis added).[1] This regulation reflects the fundamental principle that a disclaimer should not be subject to the federal gift tax unless the transfer creating the interest disclaimed was itself a "taxable transfer"; absent this limitation, the gift tax would be imposed on a donee's refusal to accept a gift that never was subject to the tax in the first place, an anomaly that Congress, given its clear intent, as discussed infra, that the gift tax should not have any retroactive application, did not ordain. We note that, consistent with this fundamental principle, the Treasury Department has not promulgated any regulation dealing with the disclaimer of interests created by "nontaxable transfers."
 
 
 11
 The transfer that created Mrs. Irvine's contingent remainder interest occurred in 1917, when Lucius P. Ordway established his irrevocable inter vivos trust. If the establishment of this trust is indeed a "taxable transfer," even though in 1917 the federal gift tax had not yet been enacted, then Mrs. Irvine's disclaimer of her contingent remainder interest created by the trust would be subject to the federal gift tax unless her disclaimer was timely within the meaning of the regulation.[2] But if the creation of her interest by the 1917 Ordway trust is not a "taxable transfer," then the interest validly disclaimed by Mrs. Irvine under Minnesota law passes to her five children unencumbered by the federal gift tax. The government stakes its case on the proposition that the creation of Mrs. Irvine's interest in the Ordway trust is a "taxable transfer" within the meaning of Treasury Regulation § 25.2511-1(c)(2). We find that proposition untenable.
 
 
 12
 It is fundamental that for a transfer to be taxable there must be an applicable tax in existence when the transfer is made. No such federal tax existed on January 16, 1917, when Lucius P. Ordway irrevocably transferred assets to the trustees of the Ordway trust and Mrs. Irvine's interest was created. Moreover, fifteen years later when the Gift Tax Act of 1932 was enacted, Congress expressed its intention not to apply the tax retroactively. Section 501(b) of the Act states: "The tax shall not apply to a transfer made on or before the date of the enactment of this Act [June 6, 1932]." Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 169, 245 (1932). This prohibition against retroactive application of the tax to pre-Act gifts has been continued throughout revisions of the Gift Tax Act and is reflected in the current Internal Revenue Code (Code) in the section governing computation of the tax. I.R.C. § 2502 (1988) (the tax is computed upon the aggregate sum of taxable gifts made throughout the donor's life during periods following June 6, 1932). "Congress has been careful to avoid any taint of retroactivity in connection with the 1932 [gift] tax and the subsequent amendments to the tax." Charles L.B. Lowndes et al., Federal Estate and Gift Taxes 643 (3d ed. 1974).
 
 
 13
 We are mindful that in a case involving Mrs. Irvine's brother John G. Ordway, the Eleventh Circuit has held that "the 1917 gift [of Lucius P. Ordway] was a taxable transfer." Ordway v. United States, 908 F.2d 890, 895 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2916, 115 L.Ed.2d 1080 (1991). The Ordway decision gives a new definition to the term "taxable transfer" by referring to section 25.2518-2(c)(3) of the regulations, which provides that "[w]ith respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." Treas.Reg. § 25.2518-2(c)(3). Based on that language, the Ordway decision concludes that "a taxable transfer occurs whenever there happens 'any transaction in which an interest in property is gratuitously passed or conferred upon another,' 26 C.F.R. § 25.2511(c)(1) [sic], even if that transaction was not subject to the gift tax." Ordway, 908 F.2d at 895.
 
 
 14
 Relying on Ordway and its interpretation of Treasury Regulation § 25.2518-2(c)(3), the government urges us to join the Eleventh Circuit in holding that the term "taxable transfer" in Treasury Regulation § 25.2511-1(c)(2) can refer to a transfer made before the enactment of the gift tax. We are unable, however, to accept our sister circuit's startling conclusion. The Ordway court's reliance on a single sentence from a regulation explicating a section of the Code that is plainly inapplicable to this situation[3] is inappropriate and misplaced. We have difficulty in understanding how there can be, in the language of section 25.2518-2(c)(3), "a completed gift for Federal gift tax purposes" unless a federal gift tax is in force when the gift is made.
 
 
 15
 Moreover, the sentence relied upon is taken out of context to support an expanded and illogical definition of the term "taxable transfer" that would include a pre-Act transfer. The distorted nature of this reading of the regulation is evident when the sentence is read in context with the sentence that immediately follows it: "[A] taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift. Thus, gifts qualifying for the gift tax annual exclusion under section 2503(b) are regarded as taxable transfers...." Treas.Reg. 25.2518-2(c)(3). Clearly, the sentence upon which the Eleventh Circuit relied is concerned with the $10,000 annual exclusion on gifts and has absolutely nothing to do with pre-Act transfers. There is a definitive difference between a taxable transfer that qualifies for the annual exclusion and on which a gift tax therefore is not imposed, such as an annual $10,000 check to a favorite nephew, and a transfer as to which the gift tax is not even applicable, such as a transfer pursuant to an obligation created in an antenuptial agreement executed in 1931 between a man and woman married later that year. See Commissioner v. Copley's Estate, 194 F.2d 364, 367 (7th Cir.1952) (transfers made in 1936 and 1944 pursuant to 1931 agreement were not taxable because "[t]o hold, as the Commissioner would have us do ... would require a retroactive application of [the gift tax], which we think is not permissible. See Sec. 501(b) of the Revenue Act of 1932."). The creation of the Ordway trust in 1917 falls into the same category as the transfers pursuant to the 1931 antenuptial agreement in Copley's Estate; it is a transfer as to which the federal gift tax is inapplicable--and even more cleanly and clearly so than the post-1932 transfers pursuant to the 1931 agreement in Copley's Estate.
 
 
 16
 In light of the consistently expressed intent of Congress not to apply the gift tax retroactively to transfers made prior to June 6, 1932, we cannot accept the proposition that the term "taxable transfer" in Treasury Regulation § 25.2511-1(c)(2) can refer to a transfer made before the enactment of the gift tax. Logic, history,[4] the expressed intent of Congress, and a straightforward reading of the regulations all join here to compel the opposite conclusion. Because the contingent remainder interest that Mrs. Irvine disclaimed in 1979 was created in 1917, it never was subject to the federal gift tax and therefore was never a "taxable transfer" for federal gift tax purposes. Once the pretense that by some mysterious alchemy the treasury regulations have transformed the 1917 transfer into a taxable event is stripped away, the government is left without any basis to sustain its position.
 
 
 17
 As taxpayers point out, if Treasury Regulation § 25.2511-1(c)(2) is inapplicable--and we hold that it is--then state law governs the validity of Mrs. Irvine's disclaimer for federal gift tax purposes. See Hardenbergh v. Commissioner, 198 F.2d 63 (8th Cir.) (where no applicable regulation Court applied state law to determine the validity for federal gift tax purposes of disclaimers of rights to intestate shares), cert. denied, 344 U.S. 836, 73 S.Ct. 45, 97 L.Ed. 650 (1952); see also Jewett v. Commissioner, 455 U.S. 305, 315, 102 S.Ct. 1082, 1089, 71 L.Ed.2d 170 (1982) (under cases antedating the initial regulation on disclaimers in 1958, "state law controlled both the 'right' to renounce and the 'timeliness' of the renunciation"). The government concedes Mrs. Irvine's disclaimer is valid under Minnesota law. The regulation being inapplicable, this disclaimer therefore is not a transfer upon which a gift tax is owed.
 
 
 18
 Having concluded that Treasury Regulation § 25-2511-1(c)(2) is inapplicable, we have no occasion to consider the issues concerning the impact of that regulation on Mrs. Irvine's disclaimer. Those issues are discussed in the latter portion of the dissenting opinion. Because in our view they are not live issues in this case, we do not reach them.
 
 IV.
 
 19
 We hold that the creation in 1917 of Mrs. Irvine's interest in the Ordway trust was not a taxable transfer. It follows that Treasury Regulation § 25.2511-1(c)(2) is inapplicable. Accordingly, Mrs. Irvine's refusal to accept part of this nontaxable gift from her grandfather--a refusal valid under state law--also is not a taxable transfer. As the federal gift tax does not apply to Mrs. Irvine's disclaimer, the decision of the District Court in favor of taxpayers is affirmed.
 
 
 20
 LOKEN, Circuit Judge, concurring.
 
 
 21
 I join the opinion of the court because I agree that the current 1986 version of Treas.Reg. § 25-2511-1(c)(2) does not apply in this case. Lucius Ordway's creation of the trust in 1917 was not a taxable transfer. However, I am not as confident as the court that the government's contentions are limited to the current version of the regulation. Therefore, I write separately to address whether the regulation in effect when Mrs. Irvine made her disclaimer applies to this case.
 
 
 22
 The regulation as initially promulgated in 1958 did not contain the current regulation's reference to "taxable transfers."[1] It provided in relevant part:
 
 
 23
 Where the law governing the administration of the decedent's estate gives a beneficiary, heir, or next-of-kin a right to completely and unqualifiedly refuse to accept ownership of property transferred from a decedent ... a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer. The refusal must be ... effective under the local law.... [I]f a person fails to refuse to accept a transfer to him of ownership of a decedent's property within a reasonable time after learning of the existence of the transfer, he will be presumed to have accepted the property.
 
 
 24
 Treas.Reg. § 25.2511-1(c) (1958). With minor changes, this regulation was in effect in 1979 when Mrs. Irvine made her disclaimer. Under this regulation, Mrs. Irvine did not make her 1979 disclaimer "within a reasonable time after learning of the existence of the transfer." See Jewett v. Commissioner, 455 U.S. 305, 318-319, 102 S.Ct. 1082, 1090-1091, 71 L.Ed.2d 170 (1982). Consequently, I find it surprising that the government has referred to the 1958 regulation in its briefs but has not expressly argued that this regulation does apply, that under it Mrs. Irvine must be "presumed to have accepted the property" prior to her 1979 disclaimer, and therefore that she should be considered the owner of that property interest and her disclaimer a taxable gift.[2]
 
 
 25
 My answer to this argument is a simple one--this prior version of the regulation does not apply in this case because it only applied to "property transferred from a decedent," whereas the interest Mrs. Irvine disclaimed was created by an inter vivos trust. At first blush, that may seem like an overly-technical reading of the regulation. I submit it is not.
 
 
 26
 As Congress recognized when it adopted I.R.C. § 2518 in 1976, two distinct federal tax issues arise from disclaimers. The first is the issue in this case: whether a disclaimer is a taxable event. The second issue concerns the effect a disclaimer will have on the original transfer of the disclaimed interest, for instance, when the disclaimer passes property to a beneficiary that qualifies for the estate tax charitable or marital deduction. See generally H.R.Rep. No. 1380, 94th Cong., 2d Sess. 67, reprinted in 1976 U.S.C.C.A.N. 3356, 3421. Because this second issue is likely to be more significant in the case of testamentary transfers than inter vivos transfers, I cannot assume that the Commissioner inadvertently limited the 1958 regulation to testamentary transfers. In other words, this is not a case where plain limiting language in the regulation should be ignored.
 
 
 27
 When the Commissioner adopted Treas.Reg. § 25.2511-1(c) in 1958, Congress had recently enacted I.R.C. §§ 2055 and 2056, which provided that the estate tax charitable and marital deductions would apply to property that passed from the decedent to an eligible beneficiary who received the property by reason of a disclaimer made before the date prescribed for the filing of the estate tax return. I.R.C. of 1954, Pub.L. No. 591, §§ 2055(a), 2056(d), 68A Stat. 390-91, 395 (1954). In an October 1, 1958, Memorandum to the Secretary of the Treasury discussing the new regulation,[3] the Commissioner explained that the rule was intended to codify the adoption of state law in two testamentary cases, Brown v. Routzahn, 63 F.2d 914, 916 (6th Cir.), cert. denied, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 (1933), and Hardenbergh v. Commissioner, 198 F.2d 63, 66 (8th Cir.), cert. denied, 344 U.S. 836, 73 S.Ct. 45, 97 L.Ed. 650 (1952). The regulation also added the limitation that, to avoid the federal gift tax, the disclaimer must be made within a reasonable time, a concept already reflected in sections 2055 and 2056 of the 1954 Code.
 
 
 28
 There is further contemporaneous evidence that the Commissioner intentionally limited the 1958 regulation to the disclaimer of testamentary interests. In 1956, the American Law Institute published its Tentative Draft No. 11 of a proposed Federal Income, Estate and Gift Tax Statute. Section X1007(h) of that proposal provided that an "irrevocable renunciation of an interest in property" is not a taxable gift if made "within a reasonable time after the person ... first bec[a]me aware of the existence of the interest." That provision expressly applied to disclaimers of interests obtained "through an inter vivos gift," as well as testamentary interests. Tentative Draft No. 11, § X1007(h)(2)(A)-(B) (A.L.I.1956). When § 25.2511-1(c) was initially proposed, it too applied broadly to any "renunciation of a vested property interest." See 22 Fed.Reg. 53, 58 (Jan. 3, 1957). However, the final regulation applied only to a "refus[al] to accept ownership of property transferred from a decedent," with the explanation that "the Gift Tax Regulations have been conformed to agree with the positions taken in the Estate Tax Regulations." See the Commissioner's Memorandum cited in note 3. Though this history is less than fully enlightening, it persuades me that the Commissioner intentionally limited the 1958 regulation to the disclaimer of testamentary interests.[4]
 
 
 29
 Limiting the 1958 regulation to its plain language is also consistent with interests of fairness and predictability in the tax laws. This regulation was inconsistent with prior judicial interpretation of the statutes. See Brown, 63 F.2d at 916-17 (leaving the question of the timeliness of the renunciation entirely to local law without imposing a "reasonable time" requirement); Comment to Tentative Draft No. 11 § X1007(h), at 33. While the Commissioner's interpretation of the tax laws through regulations is entitled to substantial deference, we should not, many years after the fact, construe this regulation so as to extend it beyond its plain language in a manner that overrules otherwise governing case law upon which taxpayers have doubtless relied. Perhaps this is why the Commissioner has not directly relied upon the prior regulation on this appeal.
 
 
 30
 The Supreme Court "retroactively" applied the 1958 regulation to the 1972 disclaimer of interests created by a 1939 testamentary trust in Jewett, 455 U.S. at 316-18, 102 S.Ct. at 1089-91. However, the disclaimed interests in Jewett were plainly "property transferred from a decedent," and thus the taxpayer had fair warning fourteen years before his disclaimers that the regulation might apply. Here, on the other hand, the regulation was inapplicable on its face to Mrs. Irvine's contingent remainder interest in an inter vivos trust. With the regulation inapplicable, the federal tax effects of Mrs. Irvine's 1979 disclaimer of that interest was governed by state law. Since the Commissioner concedes that her disclaimer was effective under Minnesota law, we must affirm.
 
 
 31
 McMILLIAN, Circuit Judge, with whom LAY and BRIGHT, Senior Circuit Judges, and JOHN R. GIBSON, Circuit Judge, join, dissenting.
 
 
 32
 I do not agree with the analysis of the majority opinion and accordingly dissent. I think the majority opinion's interpretation of "taxable transfer" as a transfer made after the enactment of the federal gift tax is too narrow.
 
 
 33
 "TAXABLE TRANSFER"
 
 
 34
 The majority opinion holds that Treasury Regulation § 25.2511-1(c)(2) is inapplicable because the trust which created Mrs. Irvine's contingent remainder interest pre-dated the enactment of the federal gift tax in 1932 and thus was not a "taxable transfer," that is, a transfer to which the federal gift tax is, or would have been, applicable. I would instead follow the analysis in Ordway v. United States, 908 F.2d 890, 895 (11th Cir.1990) (Ordway), cert. denied, --- U.S. ----, 111 S.Ct. 2916, 115 L.Ed.2d 1080 (1991). As noted by the majority opinion, the facts in Ordway and in the present case are virtually identical. In Ordway the Eleventh Circuit acknowledged that the original trust was not taxable, that is, in the sense it was not subject to federal gift tax, but concluded that it was a "taxable transfer" because, "[f]or the purposes of measuring time, ... a taxable transfer occurs whenever there happens 'any transaction in which an interest in property is gratuitously passed or conferred upon another,' even if that transaction was not subject to the gift tax." Id., citing 26 C.F.R. § 25.2511(c)(1), .2815-2(c)(3). Thus, I would hold in the present case that the original trust can be considered a "taxable transfer" for purposes of determining whether Mrs. Irvine's partial disclaimer was made within a reasonable time for purposes of Treasury Regulation § 25.2511-1(c)(2).
 
 
 35
 In my view, the meaning of the term "taxable transfer" has less to do with liability for federal gift tax than with determining whether a completed gift has been made for federal gift tax purposes, regardless of whether a federal gift tax is actually imposed on that transaction. For this reason, I do not think the citation to the annual gift tax exclusion regulation, 26 C.F.R. § 25.2815-2(c)(3), is inapposite. What is critical in the present case is whether there was a completed gift, not the reason why no federal gift tax is incurred with respect to that particular transfer. In other words, as long as the transfer effected a completed gift of property, then the transfer is a "taxable transfer," even though the transfer may not be subject to federal gift tax.
 
 
 36
 Interpreting "taxable transfer" to refer to whether the transfer effected a completed gift subject to federal gift tax, regardless of whether there was a federal gift tax at the time of the transfer, is supported by a close examination of the structure of the two Treasury regulations in question. Treasury Regulation § 25.2511-1, and § 25.2518 by cross-reference, defines transfers to which the federal gift tax applies and does not apply. For example, gifts of some kinds of property by nonresidents who are not citizens of the United States are not subject to federal gift tax. Id. § 25.2511-1(b). If a husband and wife file a joint income tax return for a tax year, the payment by one spouse of all or part of the income tax liability for that year is not a transfer subject to federal gift tax. Id. § 25.2511-1(d). The regulations describe other types of transfers that are not subject to federal gift tax: transfer of bare legal title to a trustee, transfer for a full and adequate consideration in money or money's worth, or to ordinary business transactions. Id. § 25.2511-1(g)(1).
 
 
 37
 Of special interest in the present case, indirect transfers, effected by means of disclaimers or refusals to accept ownership of property, are transfers subject to federal gift tax: "any transaction in which an interest in property is gratuitously passed or conferred upon another, regardless of the means or device employed, constitutes a gift subject to tax." Id. § 25.2511-1(c); Jewett v. Commissioner, 455 U.S. 305, 310, 102 S.Ct. 1082, 1086, 71 L.Ed.2d 170 (1982) (indirect transfer, by means of disclaimer, of contingent future interest in trust could be treated as taxable gift); McDonald v. Commissioner, 853 F.2d 1494, 1499 (8th Cir.1988), cert. denied, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). However, certain disclaimers are not transfers subject to federal gift tax. Section 25.2511-1(c) differentiates between disclaimers of interests created by "taxable transfers" before January 1, 1977, or after December 31, 1976, because the Tax Reform Act of 1976, Pub.L. No. 94-455, 90 Stat. 1520, established specific uniform standards for determining whether a disclaimer constitutes a taxable gift and the effective date for the disclaimer provisions was December 31, 1976. Id. § 2009(e)(2).
 
 
 38
 Thus, in order to determine the validity of disclaimers for federal gift tax purposes, the relevant date is December 31, 1976. In my view, § 25.2511-1(c)(2) and § 25.2518 are complementary regulations: interests created by "taxable transfers" made after December 31, 1976, are subject to the "new" uniform standards established by the 1976 Act and § 25.2518, while interests created by "taxable transfers" before January 1, 1977, are subject to the "old" standards set forth in § 25.2511-1(c)(2). In the present case the 1976 standards and § 25.2518 do not apply because the contingent remainder interest which Mrs. Irvine disclaimed was created when the original trust was established in 1917, before January 1, 1977.
 
 
 39
 In my view, whether or not the interest created was established before the enactment of the federal gift tax is irrelevant; the key is whether the interest was created by a "taxable transfer," that is, a completed gift. The original trust effected a completed gift for federal gift tax purposes, even though it necessarily pre-dated the enactment of the federal gift tax, and thus was "taxable," even though it was not subject to federal gift tax. It was not a transfer to which the federal gift tax was not otherwise applicable, for example, a transfer for a full and adequate consideration in money or money's worth. Such a transfer would not have been a "taxable transfer" for federal gift tax purposes, regardless of whether it occurred before or after the enactment of the federal gift tax, because it was not a completed gift. Mrs. Irvine did not buy her contingent remainder interest; her grandfather gave it to her. For this reason, I would hold that the 1917 trust was a "taxable transfer" for purposes of determining the validity of the disclaimer of an interest created by it, even though it was not subject to federal gift tax.
 
 
 40
 The thrust of the majority opinion in disregarding the Eleventh Circuit's analysis in Ordway relates to, in my judgment, a misunderstanding of the Ordway opinion and the government's contention in the present case. The majority opinion's reasoning is that the government seeks to apply the gift tax retroactively to transfers made prior to June 6, 1932. In attempting to distinguish Treasury Regulation § 25.2511-1(c)(2) and Judge Frank Johnson's reasoned analysis in the Ordway case, the majority opinion relies upon Commissioner v. Copley's Estate, 194 F.2d 364, 367 (7th Cir.1952). I respectfully submit such reliance is misplaced.
 
 
 41
 Treasury Regulation § 25.2518-2(c)(3) reads: "With respect to inter vivos transfers, a taxable transfer occurs when there is a completed gift for Federal gift tax purposes regardless of whether a gift tax is imposed on the completed gift." The majority opinion urges that the Eleventh Circuit misapplies this regulation, because it is concerned "with the $10,000 annual exclusion on gifts and has absolutely nothing to do with pre-Act transfers." This completely distorts the meaning and purpose of the regulation. The Commissioner has simply declared that a donor can create a "taxable transfer," even if it is not subject to a tax, existing or not existing at the time of the transfer, if there happens "any transaction in which an interest in property is gratuitously passed or conferred upon another," 26 C.F.R. § 25.2511(c)(1).[1] Thus, even though the creation of the trust in 1917 was not taxable, it can still be viewed, in applying the Gift Tax Act to transfers of property interests after 1932, as a "taxable transfer."
 
 
 42
 The majority opinion suggests that the Ordway opinion of the Eleventh Circuit has taken Treasury Regulation § 25.2518-2(c)(3) out of context. This is not true. The reference to the $10,000 annual exclusion on gifts in § 25.2518-2(c)(3) is merely an illustration of how a taxable transfer may occur when there is a completed gift regardless of whether the gift tax is imposed on the completed gift. Treasury Regulation § 25.2518-2 is directed to § 2518(a) of the Internal Revenue Code which deals with the question of how a qualified disclaimer may take place. Subsection 3 of § 25.2518-2 relates to the new nine-month period for making a disclaimer which is now described in § 25.2518-2(c)(1). The flow of the entire language relates to inter vivos transfers and provides the Commissioner's declaration that as to inter vivos transfers a taxable transfer can take place regardless of whether a gift tax is imposed upon the completed gift.
 
 
 43
 In the present case the government has not attempted to impose a gift tax on the original transfer in trust made in 1917. The taxable transfer in the present case relates solely to Mrs. Irvine's indirect transfer resulting from the disclaimer in 1979. There is no attempt to tax the 1917 bequest and the tax upon the indirect transfer resulting from the disclaimer is not in any way dependent upon the original transfer in trust made by Mrs. Irvine's grandfather in 1917. See Jewett v. Commissioner, 455 U.S. 305, 102 S.Ct. 1082.[2]
 
 
 44
 The majority opinion attempts to analogize the creation of the Ordway trust in 1917 to the transfers pursuant to the 1931 antenuptial agreement at issue in Commissioner v. Copley's Estate. This is a complete non sequitur. The facts of Commissioner v. Copley's Estate are clearly distinguishable. In that case an antenuptial agreement was executed in 1931 between a man and a woman who were married later that year. The husband agreed to pay a sum of one million dollars to his wife payable upon demand at any time after they were married. In 1936 and in 1944, pursuant to the 1931 agreement, the husband transferred $500,000 in securities on each occasion. The Internal Revenue Service attempted to tax these transfers under the Gift Tax Act of 1932. However, the court held that this would require a retroactive application of the gift tax because the transfers made in 1936 and 1944 were simply discharging a contractual debt or obligation which the husband owed to his wife pursuant to the 1931 agreement. On this basis, the Seventh Circuit held that application of the 1932 gift tax act was impermissible because it would apply the gift tax act on a retroactive basis. Contrary to the majority opinion's reasoning, "the creation" of the Ordway trust in 1917 does not fall into the "same category." In Commissioner v. Copley's Estate, the transfers made in 1936 and 1944 were not subject to the gift tax because they constituted payments of an obligation under the 1931 agreement. In the present case, the disclaimer made by the taxpayer in 1979 is the transaction which is taxable. Because Lucius Ordway made the original gift before January 1, 1977, 26 C.F.R. § 25.2511-1(c)2 applies. Under this regulation the disclaimer of interest made in 1979 is subject to the federal gift tax unless the disclaimer was valid under state law and was made within a reasonable time of the knowledge of the existence of the transfer.
 
 
 45
 As I now discuss, I would follow the original panel majority opinion as to the merits of the validity of the disclaimer.
 
 DISCLAIMER WITHIN A REASONABLE TIME
 
 46
 As noted above, because the interest disclaimed by Mrs. Irvine was created by a taxable transfer before January 1, 1977, her disclaimer is subject to federal gift tax unless it was valid under state law and was "made within a reasonable time after knowledge of the existence of the transfer." 26 C.F.R. § 25.2511-1(c)(2). It is undisputed that the disclaimer was valid under Minnesota law. What is disputed it whether the disclaimer was made within a reasonable time. This issue is a familiar one. See Cottrell v. Commissioner, 628 F.2d 1127 (8th Cir.1980) (banc); Keinath v. Commissioner, 480 F.2d 57 (8th Cir.1973), overruled by Jewett v. Commissioner, 455 U.S. 305, 102 S.Ct. 1082. I agree with the government's argument that Mrs. Irvine's disclaimer was not "made within a reasonable time after knowledge of the existence of the transfer." The "reasonable time" during which Mrs. Irvine could have made a disclaimer began to run in 1931, when she first learned of her interest, and not in 1979, when her interest vested upon the death of the last life beneficiary. Because Mrs. Irvine did not disclaim her contingent remainder interest until 1979, some 48 years after she learned of its existence, her disclaimer was not effective.
 
 
 47
 In Jewett v. Commissioner the taxpayer's grandmother died in 1939, leaving the bulk of her estate in a testamentary trust. Under the terms of the trust, the trust income was payable to her husband for life and thereafter to the taxpayer's parents. Upon the death of the surviving parent, the trust was to be divided equally among her grandchildren then living or, if any grandchild had died, to that grandchild's child or children. In 1972, some 33 years after the creation of the trust and when the taxpayer's mother, who was one of the life beneficiaries, was still alive, the taxpayer disclaimed his interest in the trust. The taxpayer argued that the word "transfer" in the Treasury regulation referred to the vesting or distribution of property and that the "reasonable time" during which he could make a disclaimer did not begin to run until that interest vested upon the death of the last surviving life tenant. See Keinath v. Commissioner, 480 F.2d at 63-64 (holding that time within which disclaimer of vested remainder interest subject to divestiture must be filed begins to run when interest becomes indefeasibly fixed both in quality and quantity, that is, after death of life beneficiary, not testator). The Supreme Court rejected the taxpayer's interpretation and held that the relevant "transfer" referred to in the regulation occurred when the disclaimed interest was created and not later when that interest vested. 455 U.S. at 312, 318-19, 102 S.Ct. at 1087, 1090-91. The Court held that the taxpayer's disclaimer in 1972 was not made within a reasonable time of either the creation of the interest, some 33 years before, or when he reached the age of majority, some 24 years before. Id. at 318, 102 S.Ct. at 1090.
 
 
 48
 Thus, under Jewett v. Commissioner, the "reasonable time" during which Mrs. Irvine would have made a disclaimer began to run, at the latest, in 1931, when she became aware of her remainder interest and when she turned 21. Mrs. Irvine's partial disclaimer in 1979, some 48 years later, was clearly too late. This is twice as long as the period which the Supreme Court rejected in Jewett v. Commissioner. Id. (disclaimer 24 years after majority); Ordway, 908 F.2d at 895 (disclaimer made 38 years after knowledge of transfer and 36 years after age of majority). Moreover, the predecessor to the 1986 regulation was promulgated in 1958, well in advance of the 1979 disclaimer. The substantive requirement in the 1958 regulation that "a refusal to accept ownership does not constitute the making of a gift if the refusal is made within a reasonable time after knowledge of the existence of the transfer" was not changed in 1986. Certainly the adoption of the regulation in 1958 was sufficient to put Mrs. Irvine on notice that an "unreasonable" delay in refusing to accept ownership would not be effective for gift tax purposes. Even assuming the "reasonable time" period did not begin to run until 1958, Mrs. Irvine did not act until 1979, some 21 years later. Cf. Jewett v. Commissioner, 455 U.S. at 316 n. 17, 102 S.Ct. at 1089 n. 17 (citing Brown v. Routzahn, 63 F.2d 914 (6th Cir.) (renunciation 8 years later was effective under state law but was considered unacceptable for federal tax purposes), cert. denied, 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557 (1933)), 317 n. 20 (taxpayer did not renounce interest until 14 years after adoption of 1958 regulation). In addition, it makes no difference for federal gift tax purposes that Mrs. Irvine's interest remained contingent until the death of her aunt, the last life beneficiary, in 1979. Jewett v. Commissioner, 455 U.S. at 317-18, 102 S.Ct. at 1090-91 (comparing disclaimer of contingent remainder to exercise of general power of appointment, which is a taxable transfer); Ordway, 908 F.2d at 893 n. 4.
 
 FAIRNESS
 
 49
 In 1979 Keinath v. Commissioner, which was decided in 1973 and in which the government did not seek certiorari, was the rule in this circuit. Keinath v. Commissioner held that the time within which the disclaimer must be filed begins to run when the remainder interest becomes "indefeasibly fixed in both quality and quantity" and that remainder interests subject to divestment did not become "indefeasibly fixed" until the death of the life beneficiary. 480 F.2d at 63. Thus, under Keinath v. Commissioner a disclaimer could be filed within a reasonable time of the death of the life beneficiary. Id. In the present case, the last life beneficiary died in June 1979 and Mrs. Irvine filed her partial disclaimer only two months later in August 1979, which was clearly "within a reasonable time" under the Keinath v. Commissioner rule. In 1980 this circuit affirmed Keinath v. Commissioner en banc in Cottrell v. Commissioner, 628 F.2d 1127. It was not until Jewett v. Commissioner in 1982, two years later, that the Supreme Court changed the disclaimer rule and overruled Keinath v. Commissioner.
 
 
 50
 It does seem unfair to apply a rule announced in 1982 to a disclaimer which was valid under the applicable law when it was made in 1979. However, to the extent that the unfairness is due to the fact that at the time the new rule was announced, it was already too late to act, a similar retroactivity argument was rejected by the Supreme Court in Jewett v. Commissioner, 455 U.S. at 317, 102 S.Ct. at 1090 (rejecting taxpayer's argument that it was unfair to apply a 1958 regulation to an interest created in 1939). Moreover, to the extent that the unfairness is due to the fact that the disclaimer when it was made was valid under this circuit's case law, one must nevertheless acknowledge that that case law was subsequently overruled by the Supreme Court. This is the unavoidable, albeit in the present case expensive, consequence of our hierarchical court system. This court is an intermediate appellate court, and our decisions can be overruled by the Supreme Court.
 
 
 51
 In sum, I would hold that the original trust was a "taxable transfer" and that the disclaimer was not made within a reasonable time. Accordingly, I would reverse the order of the district court and would remand the case to the district court for further proceedings on the valuation issue.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992
 
 
 **
 The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992
 
 
 [1]
 The government in its oral argument has conceded that Section 25.2511-1(c)(2) as amended in 1986 supersedes any earlier version of the regulation and governs this case. The earliest version of this regulation, which has the effect of creating a federal standard governing the validity of disclaimers for gift tax purposes, was promulgated in 1958
 
 
 [2]
 The issue of timeliness in cases controlled by the regulation is the subject of Jewett v. Commissioner, 455 U.S. 305, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982). Jewett deals with the timeliness of the disclaimer of an interest created after the effective date of the federal gift tax and thus does not speak to the precise issue we confront here. It is beyond dispute that in Jewett the transfer creating an interest in the person disclaiming was a taxable transfer
 
 
 [3]
 Neither Mrs. Irvine's nor her brother John G. Ordway's disclaimer is governed by section 2518 of the Internal Revenue Code. See I.R.C. § 2518 (1988). The interest each of them disclaimed was created by a transfer in the year 1917. Section 2518 and the rules implementing section 2518 apply only to the disclaimer of interests created by taxable transfers made after December 31, 1976. Tax Reform Act of 1976, Pub.L. No. 94-455, § 2009(e)(2), 90 Stat. 1520, 1896 (1976); Treas.Reg. § 25.2518-1(a)(1)
 
 
 [4]
 The Supreme Court struck down, on Due Process grounds, the original federal gift tax (enacted in 1924) to the extent it attempted to tax transfers completed prior to its effective date. Blodgett v. Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927)
 
 
 [1]
 The pivotal issue in this case is whether Mrs. Irvine's 1979 disclaimer was a taxable transfer. The 1917 transfer is relevant only because the current regulation makes it relevant. To illustrate this point by an obvious example, if my father gives property to my daughter tomorrow, whether that transfer is a taxable gift does not turn on whether he acquired the property by gift from his grandparents in 1917
 
 
 [2]
 As this court has recognized, the gift tax applies broadly to direct and indirect transfers of property interests including contingent remainders and other future interests. See Treas.Reg. §§ 25.2511-1(f), 25.2512-5; O'Reilly v. Commissioner, 973 F.2d 1403, 1405 (8th Cir.1992)
 
 
 [3]
 The Memorandum can be found at page 203-204 of the July 27, 1981 issue of Tax Notes
 
 
 [4]
 Although the A.L.I. proposal included disclaimers of inter vivos as well as testamentary interests, the Comment to Tentative Draft No. 11, § 1007(h), at 32-33, acknowledged:
 Since an extension of the provision to inter vivos transfers raises greater possibilities of tax avoidance, however, it has been suggested that this section be limited to testamentary transfers. Such a limitation was rejected in section X1007(h) because it was felt that the equities in favor of relieving from the gift tax a person who renounces a testamentary transfer applied equally to the renouncer of an inter vivos gift.
 Since Congress had only addressed the question of testamentary disclaimers in the 1954 Code, this may explain why the Commissioner decided to leave the issue of inter vivos disclaimers to Congress or the courts. Congress ultimately resolved the issue in § 2518, though only prospectively.
 
 
 [1]
 "The IRS's understanding of the terms of the Code is entitled to considerable deference." United States v. National Bank of Commerce, 472 U.S. 713, 730, 105 S.Ct. 2919, 2930, 86 L.Ed.2d 565 (1985)
 
 
 [2]
 Congress has expressly stated that the gift tax shall not be given retroactive application. Revenue Act of 1932, ch. 209, § 501(b), 47 Stat. 169, 245 (1932). In support of its holding, the majority opinion seeks to inject the issue of retroactivity into this case where none actually exists